# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON
_____

|  |  |  |
|---|---|---|
| **BARBARA BEEM,** | ) | Shelby County Circuit Court |
|  | ) | No. 144550 R.D. |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C. A. NO. 02A01-9511-CV-00252 |
|  | ) |  |
| **ROBERT ALAN BEEM,** | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |
|  | ) |  |

**FILED**

**November 5, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

From the Circuit Court of Shelby County at Memphis.
**Honorable George H. Brown, Jr., Judge**

**David E. Caywood**,
**Marc E. Reisman**,
CAUSEY, CAYWOOD, TAYLOR, McMANUS & BAILEY, Memphis, Tennessee
Attorneys for Defendant/Appellant.

**Kay Farese Turner**,
**Charles W. McGhee**,
TURNER & McGHEE, Memphis, Tennessee
Attorneys for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AS MODIFIED AND REMANDED**

**FARMER, J.**

**LILLARD, J.** : (Concurs)
**SUMMERS, Sp. J.** : (Concurs)

Defendant-Appellant, Robert Alan Beem ("Husband"), appeals the judgment of the trial court ordering him to pay child support, alimony, and attorney's fees to Plaintiff-Appellee, Barbara Beem ("Wife").

The parties were divorced in October 1994 by a final decree which incorporated the terms of the parties' marital dissolution agreement ("MDA"). Pursuant to the MDA, the Wife was granted sole custody of the parties' two minor children, who were 16 and 14 years of age at the time of the divorce. As pertinent to this appeal, the MDA also contained the following provisions:

> 2. The parties mutually agree one with the other that the Husband shall pay to the Wife as child support the sum of $272.00 per month commencing on September 1, 1994 for a period of eight (8) months. The amount of child support being agreed upon is based upon representation of the Husband that he is unemployed and making $850.00 per month. However, the parties further agree that in the event the Husband becomes employed during the eight (8) month period in which he pays this amount of child support, then and in that event, the child support guidelines will apply to his then and there existing income. At the end of the eight (8) month period, whether or not the Husband is employed, the child support will be automatically raised to the guidelines based upon a minimum gross income of $40,000.00 or the Husband's actual income, whichever is greater.

> 3. The parties have further agreed that the Wife is entitled to alimony, however, the decision regarding the amount and length of time she will receive such alimony shall be deferred for a period of eight (8) months from August 15, 1994, at which time there will be a hearing before the Court on the alimony issue for determination of the amount and length of time to which she may be entitled to such alimony.

> 4. The parties mutually agree that each party shall be solely responsible for their own attorney's fees.

> . . . .

> 7. Husband shall keep the Court advised and Wife advised during this eight (8) month period of time of all developments relative to his employment and will relay through his counsel this information to be relayed to Wife's counsel regarding his employment status, the amount of money he is making, together with documentation either in the form of a pay stub or other certification of his employment and current wages. . . .

In accordance with these provisions, the trial court conducted an evidentiary hearing in July 1995 to determine the amount of child support and alimony to be awarded the Wife. In August 1995, the trial court entered its judgment ordering:

1. . . . [T]hat [the Husband] shall pay to [the Wife], as rehabilitative alimony, the sum of $750 per month for three years to be increased to the sum of $900 per month for four years for a total of seven years rehabilitative alimony.

2. That [the Husband] shall pay to [the Wife] the sum of $1,059 per month as child support for the parties' two minor children, such sum being based upon an income of $55,000 per year and such sum being consistent with the child support guidelines.

3. [That the Husband] shall pay to [the Wife] the sum of $1,900 as additional alimony *in solido* to be used by her to pay the fees of her counsel for representation in this matter now before the court.

On appeal, the Husband presents the following issues for review:

1. Did the trial court err in awarding seven years of alimony to be paid at the rate of $750.00 per month for the first three years and $900.00 per month for the following four years where [the Wife] is a certified public accountant gainfully employed by Federal Express whose income is sufficient to meet her reasonable needs, where her earned income is approximately equal to that of [the Husband] and where ten and a half months before the hearing, [the Wife] represented to the court that she only needed $500.00 per month for three years?

2. Did the trial court err in allowing [the Wife] to testify about communications which took place between the parties during settlement negotiations?

3. Did the trial court err in basing [the Husband's] child support obligation on an annual income of $55,000.00 where the parties' marital dissolution agreement which was approved by the trial court provided that child support would be based upon [the Husband's] actual income or $40,000.00 annual income whichever was greater and where the evidence showed that [the Husband's] actual income was no more than $42,000.00 per year?

4. Did the trial court err in awarding an attorney fee to [the Wife] where the parties had agreed that they would pay their own attorney fee and where [the Wife] has sufficient funds to pay her own fee?

## I. Child Support

As an initial matter, we conclude that the trial court erred in ordering the Husband to pay child support in the amount of $1,059 per month based on the court's finding that the Husband had the ability to earn a gross annual income of $55,000 ($4,583 per month). The evidence at the

hearing below established that the Husband earned in excess of $55,000 from his former employment with Kimberly-Clark; however, the Husband left Kimberly-Clark in 1994 when his job was eliminated. At that time, the Husband, an engineer in the pulp and paper industry, decided to start his own consulting business. The Husband testified that he also sought employment at various companies from which he solicited business, and he provided his resume to a number of employment search firms, but the Husband's efforts to obtain a full-time position were unsuccessful.

At the time the parties entered into the MDA, the Husband was unemployed and was earning no income from the business. By the date of the hearing, however, the Husband reportedly was earning a gross monthly income of $2,970. During the period from March 16, 1995, to June 30, 1995, gross receipts from the Husband's business totaled $35,086.95. During that same period of time, the Husband reported business expenses of $24,691.71. Accordingly, the Husband's gross income from self-employment for this three-and-one-half month period was $10,395.24, or $2,970 per month. The Husband testified that business was improving and that he anticipated being able to earn a gross income of $3,500 per month for the remainder of the year.

In imputing $55,000 in gross annual income to the Husband, the trial court appeared to be influenced primarily by two findings: (1) that the Husband earned in excess of $55,000 while still employed by Kimberly-Clark, and (2) that, as a sole proprietor, the Husband had "a motivation to not be productive" and "to minimize" his reported income.

We recognize that the Child Support Guidelines authorize the imputation of income to an obligor spouse who is willfully and voluntarily unemployed or underemployed. In such cases, the trial court may determine the obligor spouse's potential income based on evidence of the obligor's educational level or previous work experience. *See* Tenn. Comp. R. & Regs. tit. 1240, ch. 2-4-.03(3)(d) (amended 1994). Here, however, the record contains no evidence that the Husband was willfully and voluntarily unemployed or underemployed. It was undisputed that the Husband left Kimberly-Clark because his position was eliminated. No evidence was introduced at the hearing to contradict the Husband's testimony concerning his attempts to solicit business or to obtain full-time employment. Further, in entering into the MDA, the parties agreed that the Husband was then unemployed; that, if the Husband became employed in the subsequent eight-month period, the child

support guidelines would apply to his "existing" income; and that, at the conclusion of the eight-month period, the child support guidelines would be applied either to $40,000 or to the Husband's "actual" income, whichever was greater. We believe that, under these circumstances, the trial court should not have relied upon the Husband's former salary at Kimberly-Clark in determining the Husband's current potential income. *Cf. Riley v. Riley*, 1995 WL 311331 (Tenn. App. 1995) (husband voluntarily left employment with school board where he was earning over $28,000 annually and unsuccessfully attempted to earn living as farmer); *Myers v. Myers*, 1995 WL 140754 (Tenn. App. 1995) (husband voluntarily terminated operation of profitable trucking business which was netting in excess of $40,000 per year).

The more difficult issue presented in this case is whether the trial court's expressed skepticism regarding the Husband's reported gross income from self-employment justified the imputation of income to the Husband. After a careful review of the record, we conclude that the evidence does not support the imputation of income on this basis.

In calculating gross income from self-employment, the Husband was entitled to deduct "reasonable expenses necessary to produce such income." Tenn. Comp. R. & Regs. tit. 1240, ch. 2-4-.03(3)(a) (amended 1994). Excluded from "reasonable expenses" are "[d]epreciation, home offices, excessive promotional, excessive travel, excessive car expenses, or excessive personal expenses." *Id.* At the hearing, the Wife questioned the high amount of expenses claimed by the Husband for a home business, as well as the extensive traveling done by the Husband in connection with the business. The Wife also testified that the Husband formerly had a contract with Federal Express that, had it "been on an annual basis," would have grossed the Husband about $80,000 per year. On cross-examination, the Husband acknowledged that such a contract existed, but he testified that Federal Express canceled the contract in July 1994. At the hearing's conclusion, the trial court specifically declined to find that the Husband had engaged in any dishonesty in reporting his gross income from self-employment, but the court indicated that it would view the Husband's financial statement and documents "with some degree of skepticism."

We understand the trial court's concern that, where the obligor spouse is self-employed, the potential exists for the obligor to manipulate his reported income either by failing to

aggressively solicit business or by inflating his business expenses, thereby minimizing his income. *See, e.g., Koch v. Koch*, 874 S.W.2d 571, 578 (Tenn. App. 1993) (recognizing difficulty of establishing husband's self-employment income from commercial painting business). In this case, however, neither the trial court's findings nor the evidence at the hearing below demonstrated that the Husband was, in fact, manipulating his income. To the contrary, all of the evidence indicated that the Husband had successfully sought clients for his consulting business and that he was actively engaged in pursuing new clients. Further, in light of the trial court's refusal to find that the Husband's financial documents contained any "untruths," we are reluctant to infer that the trial court found the Husband's business expenses to be unreasonable. Even if such a finding by the trial court could be inferred from the record, we believe that the evidence preponderates against such a finding.

Although the Husband admitted that his expenses were not audited or reviewed by a third party, our review reveals nothing unreasonable about the Husband's claimed business expenses. It was undisputed that the nature of the Husband's business involved extensive travel. Contrary to the Wife's position, the evidence indicated that the Husband may have saved money by driving his personal car and staying with friends on out-of-town trips, as well as by purchasing used, rather than new, equipment for his business, such as a camcorder and a lap-top computer. Some of the Husband's travel expenses were later reimbursed by clients, but in those situations, the Husband testified, he properly included the reimbursement as part of his gross business receipts. In accordance with the Child Support Guidelines, the Husband did not deduct business expenses relative to maintaining his office at home. *See* Tenn. Comp. R. & Regs. tit. 1240, ch. 2-4-.03(3)(a) (amended 1994).[1]

Based on the foregoing evidence, we conclude that the record does not support the imputation of income to the Husband in excess of $3,500 per month, the amount suggested by the Husband below and on appeal. Accordingly, as the Husband requests, we modify the Husband's child support obligation to $833 per month. *See* Tenn. Comp. R. & Regs. tit. 1240, ch. 2-4

---

[1]The Wife takes issue with the fact that the Husband's business expenses exceeded seventy percent of his gross business receipts. Absent a specific finding by the trial court, however, we are unwilling to conclude that this percentage alone rendered the Husband's business expenses unreasonable. We note, for example, that in *Burchfield v. Nave*, 1994 WL 13374, at *1 (Tenn. App. 1994), *perm. app. denied*, the expenses from the parties' apartment rental business exceeded sixty-two percent of their gross receipts.

(amended 1994). Nevertheless, in an effort to ensure the Wife access to information which might justify any future modification of child support, we direct the Husband to provide the Wife with all pertinent financial documents, including W-2's, 1099 tax forms, tax returns, and any other evidence of income earned by the Husband, each year as soon as such documents become available. *See Jones v. Jones*, 1993 WL 523567, at *2 (Tenn. App. 1993); *see also Merritt v. Merritt*, 1992 WL 220160 (Tenn. App. 1992). This obligation shall apply to the 1995 tax year and shall continue until Husband's obligation to pay child support ceases.

## *II. Alimony*

We decline to disturb the trial court's award of rehabilitative alimony to the Wife in this case. As previously indicated, the trial court awarded the Wife alimony in "the sum of $750 per month for three years to be increased to the sum of $900 per month for four years for a total of seven years rehabilitative alimony." The Husband concedes that the Wife was entitled to an award of rehabilitative alimony. The Husband contends, however, that the trial court erred in determining the amount and duration of alimony to be awarded because the Wife failed to demonstrate a need for such a large award. Alternatively, the Husband argues that the alimony award should be reversed because, in a prior pleading, the Wife sought only $500 in alimony for a period of three years and, thus, the Wife was estopped from seeking more than this amount in a later pleading or at the hearing.

Pursuant to Local Rule 14C of the Shelby County Circuit Court, the Wife filed a financial affidavit reflecting her monthly income and expenses. *See* Shelby County Cir. Ct. R. 14C. After deducting expenses from net income, the Wife's financial affidavit reflected a monthly deficit of $1,805. After deducting from this amount the $833 in child support awarded in this case, as modified, the Wife's financial affidavit still would reflect a monthly deficit of $972. Accordingly, if accepted at face value, the Wife's financial affidavit demonstrates a need for alimony in excess of the monthly amounts awarded of $750 and $900. The Husband contends, however, that the deficit reported was inaccurate because the Wife's affidavit overstated her monthly expenses while under reporting her income.

We first reject the Husband's argument regarding the reasonableness of the Wife's

monthly expenses as reflected in her affidavit. Based upon its award of alimony to the Wife, the trial court evidently found the Wife's claimed monthly expenses of approximately $4,377 to be reasonable, and we conclude that the evidence does not preponderate against such a finding. *See McPherson v. McPherson*, 1992 WL 247639, at *2 (Tenn. App. 1992); *see also Quarry v. Quarry*, 1992 WL 141796, at *5 (Tenn. App. 1992). At the hearing, the Husband challenged only four listed expenses of the Wife. First, the Husband contended that any expenses listed on behalf of the parties' sixteen-year-old daughter were inflated because the daughter worked twenty hours per week and earned enough money to contribute to her own expenses. The Wife testified, however, that the daughter paid only a limited amount of her own expenses, such as entertainment and gas, and that the daughter did not pay for rent, food, or insurance. The Wife's affidavit listed monthly entertainment expenses for both children as $100, and the affidavit did not list any expenses for gas for the daughter's car. Even if the daughter paid for all of her own entertainment expenses, therefore, at most the daughter's income would reduce the Wife's monthly expenses by only $50 (half of the children's entertainment expenses).

Next, the Husband challenged the Wife's listed monthly expense of $50 for charitable contributions, but the Husband has not challenged this expense on appeal.

On appeal, the Husband does challenge several items listed under the Wife's claimed home maintenance expense of $490.66, arguing that many of the items represent one-time, and not annual, expenses. We note, however, that the Husband did not challenge these specific items at the hearing below. Instead, the Husband made the general argument that $490.66 for home maintenance was excessive because it was "just a little bit less" than the rent the Husband was paying for a two-bedroom apartment. We also note that the Husband could have cross-examined the Wife regarding these specific home maintenance expenses, but apparently chose not to pursue this line of questioning.

Finally, the Husband challenged the Wife's listed monthly expense of $125 for a family vacation fund, stating through his counsel that "[t]hat may or may not be able to be done right now." The trial court, however, addressed this argument from the bench, stating:

> I mean the Beem children and [the Wife are] entitled to a
> vacation just like [the Husband]. He went fishing and did some other
> things while he was out west seeking employment. And he went to
> Destin, . . . . So she's entitled to a vacation, . . . .

As for the Husband's arguments regarding the Wife's income, the Wife's testimony and her financial affidavit, which was filed as an exhibit at the hearing below, indicated that the Wife's monthly net income was $2,572. This amount included net monthly wages of $2,335 from the Wife's employment as an accountant with Federal Express, as well as net monthly income of $237 from the Wife's employment as conservator of her father's estate. Additionally, on cross-examination, the Wife admitted that in 1994, the year prior to the hearing, the Wife received approximately $2,000 in bonuses from Federal Express. Although the Wife testified that "there [had] been a number of years when Federal Express [did] not give the bonuses," the Wife also admitted that she already had received one bonus in 1995 for $1,400.[2]

The Husband contends that the trial court should have included the Wife's bonuses in her income when the court determined the Wife's need for alimony. In determining the amount and duration of the alimony to be awarded in this case, the trial court was required to consider, among other factors, the relative earning capacity and financial resources of each party, including income from all sources. *See* T.C.A. § 36-5-101(d)(1)(A) (Supp. 1995). Nevertheless, even if the trial court failed to include the Wife's bonuses in her income, this failure does not require reversal of the alimony award. Accordingly, based on Wife's demonstrated need for alimony, the trial court did not err in awarding alimony in the amounts of $750 and $900 per month, respectively.[3] If the Wife's bonuses are added to her income, the Wife's financial affidavit still reflects a monthly deficit

---

[2]Apparently, the Wife did not begin working for Federal Express until 1993 or 1994.

[3]Inasmuch as the Wife sufficiently demonstrated a need for alimony in the amounts awarded, we conclude that reversal of the alimony award is not warranted by the trial court's arguably erroneous admission of testimony concerning statements made by the Husband during settlement negotiations. On appeal, the Husband contends that the trial court erred in allowing the Wife to testify that the Husband refused to agree to pay for the children's college educations. The Husband argues that introduction of this evidence violated Rule 408 of the Tennessee Rules of Evidence, which precludes the introduction of "[e]vidence of conduct or statements made in compromise negotiations." T.R.E. 408. Contrary to the Husband's argument, a careful review of the transcript indicates that the trial court sustained the Husband's objections to the Wife's testimony regarding the Husband's refusal to agree to pay for the children's college educations. In any event, after reading the relevant portion of the transcript, we remain convinced that this testimony did not affect the trial court's award of alimony in this case.

in excess of $800.

Given the duration of the parties' marriage and the Wife's contributions to the marriage, both tangible and intangible, we likewise conclude that the trial court did not abuse its discretion in establishing a seven-year term for the alimony award. *See, e.g., **Quarry v. Quarry***, 1992 WL 141796, at *4 (Tenn. App. 1992); *see also* T.C.A. §§ 36-5-101(d)(1)(C), (J) (Supp. 1995). The evidence at the hearing showed that the parties were married for twenty-three years. In the early years following the parties' marriage, the Wife worked full-time and put the Husband through college. The Wife quit working outside the home after the birth of the parties' first child. During the marriage, the parties relocated to a different city at least five times while the Husband worked to advance his career. In 1986, when the parties had been married approximately fifteen years, the Wife returned to college to obtain an accounting degree. After obtaining her degree, the Wife became a certified public accountant. At the time of the divorce, the Wife had been working as an accountant for Federal Express for less than two years. During the eight- or nine-month period between entry of the final divorce decree and the hearing below, the Wife supported herself and the children with only minimal child support and no alimony payments from the Husband.

Finally, we reject the Husband's argument that the Wife was estopped from seeking more alimony at the hearing than she requested in a previous pleading. The Wife's initial claim for alimony in the amount of $500 per month for three years was made in a memorandum filed with the court approximately eleven months prior to the hearing pursuant to Local Rule 14D of the Shelby County Circuit Court. Rule 14D requires counsel in contested divorce cases to provide to the court, prior to trial, a memorandum setting forth the party's position with regard to the various legal issues before the court, such as grounds for divorce, visitation, child support, disposition and value of the marital home, disposition of any other property, alimony, and attorney's fees. *See* Shelby County Cir. Ct. R. 14D. Approximately one month prior to the hearing in this case, the Wife amended her proposed alimony award to request $1,000 per month for a period of eight years.

Under the doctrine of "judicial estoppel," where a person states under oath in prior litigation, "either in pleadings or testimony, that a fact is true, she will not be permitted to deny that fact in subsequent litigation." *Cardin v. Campbell*, 920 S.W.2d 222, 223-24 (Tenn. App. 1995).

Principles of judicial estoppel may also prevent a party from changing a legal position asserted in prior litigation, provided the position was asserted in a sworn pleading. *Layhew v. Dixon*, 527 S.W.2d 739, 741 (Tenn. 1975). Where the previous pleading was not sworn, however, and represented "no more than the statements of position of the parties to that action," estoppel principles do not apply because "judicial estoppels are not favored and ordinarily do not arise out of mere unsworn pleadings." *Id.*

The memorandum required by Rule 14D does not appear to be a sworn statement or pleading, such as the financial affidavit required by Local Rule 14C. *See* Shelby County Cir. Ct. R. 14C.[4] Rather, the memorandum appears to represent no more than the party's statement of position with regard to the issues before the court. Accordingly, principles of judicial estoppel do not apply to the Wife's memorandum filed pursuant to Rule 14D, and the Wife was not estopped from changing her position with regard to the alimony issue.

### III. Attorney's Fees

We also affirm the trial court's award of $1,900 to the Wife as additional alimony *in solido* to be used by the Wife to pay her attorney's fees incurred relative to the hearing below. The Husband insists that the Wife should be required to pay her own attorney's fees pursuant to the terms of the parties' MDA, under which the parties mutually agreed to "be solely responsible for their own attorney's fees." Because the MDA specifically contemplated that a hearing would be held after eight months to determine the alimony issue, the Husband argues, the attorney's fee provision also applied to the hearing below. In awarding attorney's fees to the Wife, the trial court ruled that, although the fee provision governed the proceedings up to the date of the MDA, the provision did

---

[4]Rule 14C requires the parties in "all contested divorces or suits for separate maintenance" to submit sworn statements of their monthly income and expenses. *See* Shelby County Cir. Ct. R. 14C(1). Rule 14C specifically permits the parties to change their statements "as soon as possible, and not later than ten (10) days before the trial, unless circumstances beyond a party's control are shown." *Id.* Even if Rule 14C did not permit the parties to change their financial statements, we question whether principles of judicial estoppel would prevent such changes, inasmuch as a party's financial position may change between the time the statement is filed and the trial. *See, e.g., Loveridge v. Loveridge*, 1986 WL 5896, at *3 (Tenn. App. 1986) (refusing to extend doctrine of judicial estoppel to preclude husband from presenting proof of property valuations which were different than those previously given in husband's financial statement and answers to wife's interrogatories).

not preclude an award of attorney's fees in future proceedings.

We agree with the trial court that the MDA's attorney's fee provision did not preclude an award of attorney's fees to the Wife for the hearing below. Although the attorney's fee provision may have applied to the alimony hearing contemplated by the MDA, the provision did not apply to any future proceedings brought to enforce the child support provisions of the MDA as incorporated into the final divorce decree. Instead of providing for a later hearing to determine child support, the MDA placed an affirmative, continuing obligation on the Husband to keep the trial court and the Wife advised of all developments relative to the Husband's employment status, including the amount of income the Husband was making. This obligation required the Husband to provide the Wife with documentation of his income, such as a pay stub or other certification. Further, if the Husband became employed during the eight-month period, the MDA required the Husband to adjust his child support payments in accordance with the Child Support Guidelines. At the conclusion of the eight-month period, the Husband's child support obligation would automatically increase in accordance with the guidelines based on a minimum gross income of $40,000 or the Husband's actual income, whichever was greater.

Tennessee has long recognized "the right of the custodial parent to bring suit to enforce the children's right of support and to recover reasonable attorney's fees from the obligor spouse." *Silverstein v. Silverstein*, 1987 WL 18376, at *5 (Tenn. App. 1987) (citing *Graham v. Graham*, 140 Tenn. 328, 334-35, 204 S.W. 987, 989 (1918)). In this regard, Tennessee Code Annotated Section 36-5-103(c) permits a custodial spouse to recover reasonable legal expenses incurred in any proceeding to enforce a decree for child support. *Lumpkins v. Lumpkins*, 1995 WL 581417, at *5 (Tenn. App. 1995); T.C.A. § 36-5-103(c) (Supp. 1995).[5] In awarding attorney's fees

_____

[5]Section 36-5-103(c) provides that:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

T.C.A. § 36-5-103(c) (Supp. 1995).

pursuant to section 36-5-103(c), the trial court may consider proof of inability to pay, but "ability to pay should not be the controlling consideration." **Sherrod v. Wix**, 849 S.W.2d 780, 785 (Tenn. App. 1992).

At the hearing below, the Husband admitted that he did not adjust his child support payments during the eight-month period as required by the MDA. Although the Husband increased his child support payments at the conclusion of the eight-month period, the Wife testified that she incurred additional attorney's fees because the Husband insisted on going to trial on the issue of child support when the parties were unable to resolve their dispute. Accordingly, we hold that, despite the attorney's fee provision contained in the parties' MDA, section 36-5-103(c) authorized the trial court to award the Wife $1,900 to cover her attorney's fees incurred relative to the hearing below. In so holding, we note that, although the MDA contemplated that the parties would be responsible for their own attorney's fees, the MDA also contemplated that the Husband would comply with the child support provisions of the MDA without resort to court action. The Husband should not be permitted to enforce the MDA's attorney's fee provision against the Wife relative to a hearing which was necessitated in part by the Husband's failure to abide by the child support provisions of the MDA.

### *IV.  Conclusion*

We modify the trial court's judgment to order the Husband to pay child support in the amount of $833 per month. Additionally, we order the Husband to provide the Wife with all pertinent financial documents and other evidence of income earned by the Husband in accordance with the dictates of this opinion. In all other respects, the trial court's judgment is affirmed. This cause is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to the Husband and one-half to the Wife, for which execution may issue if necessary.

_____
FARMER, J.

_____
LILLARD, J. (Concurs)


_____
SUMMERS, Sp. J. (Concurs)