**Patsy Lee Cobb KOCH,
Plaintiff–Appellee,**

**v.**

**Mark Francis KOCH, Defendant–
Appellant.**

Court of Appeals of Tennessee,
Western Section at Jackson.

Oct. 15, 1993.

Application for Permission to
Appeal Denied by
Supreme Court Feb. 22, 1994.

David E. Caywood, Darell D. Blanton, Memphis, for plaintiff-appellee.

Kay Farese Turner, Charles W. McGhee, Memphis, for defendant-appellant.

CRAWFORD, Judge.

Plaintiff Patsy Lee Koch (Wife) sued defendant Mark Francis Koch, (Husband) for divorce and related relief. Defendant answered the complaint and filed a counterclaim for divorce and related relief.

The parties were married on September 16, 1977, and have two minor children, Matthew, born May 23, 1985, and Rachel, born May 29, 1990. Wife graduated from college in 1980 with a Bachelors Degree in Special Education and lacks fifteen hours for comple-

tion of her Masters Degree. She taught in the Memphis City School system from 1980 through 1985. After Matthew was born, she returned to teaching from August of 1986 until January of 1988. Husband graduated from college in 1980 with a Bachelors Degree in Engineering Technology, but after graduation he purchased an interest in a small corporation with a $10,000 loan from his mother. Due to financial difficulties, the corporation ceased doing business in December of 1988, at which time Husband assumed some of the corporation's liabilities and work in progress, and began doing business as a sole proprietorship under the name of Commercial Painting Company.

The marriage was stormy almost from its inception. The parties were separated four times, including the last separation in March of 1990 that culminated in the divorce. Wife filed her complaint on March 29, 1990, at which time she was seven months pregnant with Rachel.

A non-jury trial was held in July of 1991 for thirteen days; at its conclusion the trial judge announced his findings from the bench. On July 1, 1991, prior to the entry of any order, Husband filed a "Motion for Reconsideration, Clarification, Alteration and/or Amendment of the Court's Oral Ruling." The court orally announced its ruling on this motion from the bench on July 1, 1992. Subsequently, on June 16, 1992, the court entered a decree of divorce with reservation of economic matters, and on January 11, 1993, entered a final decree. The decree, inter alia, divorced the parties, awarded custody of the two minor children to the Wife, specified visitation rights to the Husband, ordered the Husband to pay child support and a part of Wife's attorneys' fees and divided the marital property. Husband has appealed, presenting five issues for review, and Wife presents an additional five issues for review.

▮ Husband's first issue for review as stated in his brief is: "Whether the evidence preponderates against the Trial Court's finding that Wife had not perjured herself during the trial and therefore denied Husband's motion to dismiss Wife's complaint for divorce and all relief sought therein." Husband contends that Wife committed perjury in her

testimony concerning (1) her placement of income into a joint checking account during the marriage, (2) her knowledge of DHS procedures and what triggers a child abuse investigation, and (3) her employment opportunities and job offers.

At trial, Wife testified that she put all of the money that she earned during the course of the marriage, except for the times the couple was separated, into a joint checking account. On cross examination when asked about an account opened in her name, Wife testified that she had made a mistake in her previous testimony about the checking accounts, that the checking account opened in her name was to pay furniture payments, groceries and apartment rent, and that she deposited all of her 1983 income into that separate account. Husband also asserts that Wife by letter dated January 1983 directed that medical insurance reimbursements be mailed to her mother's address, and points out that this occurred during the time the parties were living together. Wife testified, however, that this was done during the time they were separated and that the date on the letter should have been January 1984, because the parties did not separate again until the end of 1983.

Wife also testified that she had no knowledge of the workings of DHS and its procedures for filing complaints concerning child abuse. On cross, however, she admitted that she had attended a seminar on physical abuse and neglect of children, and had taken notes on the investigative procedure for child abuse. The record reflects that this line of testimony refers to a situation that arose when the parties' son returned from a scheduled visitation with Husband. Because the child had a bump or bruise on his head, Wife called Husband to inquire about it. Husband refused to talk to her, so she took the child to the doctor who obtained the history and reported the matter to DHS. When Husband failed to discuss the matter with the DHS representative, the result was the institution of a DHS investigation. Wife contended that she did not know that simply taking a child to a doctor would commence such an investigation. Although she had taken notes on investigative procedures of child abuse, it

was not clear that she knew that such an investigation would be launched under these circumstances.

Husband also asserts that Wife perjured herself concerning her employment status and opportunities. Wife testified that she had applied to the Memphis and Shelby County School systems for employment, but said that she had neither been accepted for employment nor given encouragement that there would be a position available for her in the future. Dr. Elizabeth Keel, the Director of Certificated Personnel of the Shelby County School Systems, testified, however, that she offered Wife an interim position contingent on the availability of funding, which Wife accepted. Dr. Keel did admit that she never informed Wife that the contingency had been removed and that Wife was actually offered a position that she could accept. Husband claims that Wife deliberately attempted to mislead the Court concerning her financial needs for the purpose of receiving a greater alimony award.

Husband contends that Wife's "perjured testimony" precludes her relief, and relies upon the opinion of this Court in *Inman v. Inman*, Appeal No. 89–82–II, 1989 WL 122984 (Tenn.App. MS Oct. 18, 1989). In *Inman*, the Husband falsely answered written interrogatories. When some of the true facts came to light, he filed amended answers that later developments revealed were not truthful in themselves. At trial, the Husband conceded that he knowingly gave false answers and indulged in half truths. The court, in denying Husband relief, stated that "the doctrine of unclean hands repels the unclean plaintiff at the steps of the Courthouse." *Id.* at *5 (quoting *Farmers & Merchants Bank v. Templeton*, 646 S.W.2d 920, 924 (Tenn.App.1982)).

Tennessee Jurisprudence explains that

[t]o constitute perjury or false swearing, the false statement must be one of fact, not of opinion, and an honest but erroneous expression of opinion is not perjury, but the existence or nonexistence of an opinion or belief is, in itself, a material matter of fact, and a false statement of opinion or belief may constitute the offense.

20 Tenn.Jur. *Perjury* § 3 (1985).

In the case at bar, the trial judge specifically found that the Wife had not willfully lied. We quote from the record:

I certainly don't find that this lady perjured herself.... I have no way to look into anybody's brain, but I can't believe that this lady knowing the conduct of this trial by Ms. Turner, her ability, bulldoggedness, whatever, was about to let her get by with any kind of false statement whether she made it that day or next month; and I just can't believe that she intentionally lied.

If I believed it, to be honest with you ... I'd dismiss the case. I don't believe it. I've had [the wife] up here a long time; and she may be many things, but I'm convinced she wasn't lying ...

\* \* \* \* \* \*

I have no belief in my mind that this lady sat up here and lied to me about her job situation or her deal with the hospital or whatever. Now, I do think that under pressure and under your examination and under all of things that we went through in this case, the pressure of fighting for her children, she may have exaggerated, she may have misstated, she may have done this or that, but not anything that in my opinion I should call the Attorney General, which I do if I feel like somebody is trying to perjure themselves, and ask him to come over and look at these statements and press charges....

In *Weaver v. Nelms*, 750 S.W.2d 158 (Tenn. App.1987), the court said:

The weight, faith and credit to be given to any witness' testimony lies in the first instance with the trier of fact who has the opportunity to observe the manner and demeanor of the witnesses as they testify. The credibility accorded by the trier of fact will be given great weight by the appellate court.

750 S.W.2d at 160 (citations omitted).

In the case at bar, the trial judge observed Wife as she gave extensive testimony and determined that she had not given perjured

testimony. The evidence does not preponderate against this finding.

We will consider Husband's second issue for review and Wife's sixth issue together. Husband's second issue for review, as stated in his brief, is "Whether the evidence preponderates against the Trial Court's award of custody of the two minor children to Wife." Wife's sixth issue, as stated in her brief, is: "Whether the Trial Court erred in its award of specified visitation rights to Husband as being overly broad and unduly burdensome on Wife and the minor children." Our review of this issue is de novo upon the record with a presumption of correctness of the findings of fact of the trial court. T.R.A.P. 13(d), *Hass v. Knighton*, 676 S.W.2d 554 (Tenn.1984).

█ Trial courts are vested with wide discretion in matters of child custody and the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion. *Mimms v. Mimms*, 780 S.W.2d 739 (Tenn.App.1989). In custody cases, the welfare and best interests of a child are of paramount concern. A determination of a child's best interests must turn on the particular facts of each case. *Scarbrough v. Scarbrough*, 752 S.W.2d 94 (Tenn.App.1988). In *Bah v. Bah*, 668 S.W.2d 663 (Tenn.App.1983) the court said:

> We adopt what we believe is a common sense approach to custody, one which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. *Mollish v. Mollish*, 494 S.W.2d 145, 151 (Tenn.App.1972). There are literally thousands of things that must be taken into consideration in the lives of young children, *Smith v. Smith*, 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach:
>
> > Fitness for custodial responsibilities is *largely a comparative matter.* No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others.

> *Edwards v. Edwards*, 501 S.W.2d 283, 290–91 (Tenn.App.1973) (emphasis supplied).

668 S.W.2d at 666.

█ Husband asserts that Wife's perjury in the trial of the case is indicative of her moral conduct and character, and contends that the children should not be exposed to such an environment. Husband also maintains that throughout their separation and this litigation, Wife has manifested a clear intent to interfere with his visitation rights and parental responsibility. Husband further notes that Wife without any foundation reported him for child abuse, which is likewise indicative of her moral fiber. Wife, on the other hand, contends that Husband's lack of responsibility is evidenced by his failure to deliver and pick up their child at school during visitation periods. She also argues that Husband cursed the child's principal in a controversy concerning the child's school attendance. Furthermore, Wife asserts that Husband failed to communicate with her regarding the children and in general did not exhibit the attributes of a good father.

The trial court specifically found that both parties were capable of exercising custody over the children, but considering the comparative fitness of the parents and the welfare and best interests of the children under the particular facts of this hotly contested case, the trial court felt that custody should properly be awarded to Wife. From our review of this record as a whole, we cannot say that the evidence preponderates against the trial court's finding in this regard.

In granting custody of the children to Wife, the trial court granted extensive visitation rights to Husband. Wife contends that the scheduled visitation is complex, convoluted and unduly burdensome to Wife. Admittedly the visitation provided by the court is explicit and perhaps can be termed complex. However, the record in this case clearly supports such a schedule. The record abounds with bickering, charges and countercharges between the parties, a large part of which relates to visitation pending the litigation. The trial court apparently observed that any attempt to induce the parties to act in a rational and well-intentioned manner toward

visitation would be futile. The record indicates to this Court that until the parties place the welfare of their children above their individual vindictiveness and hatred, they must observe without deviation a rigid visitation schedule. Obviously the trial court gave much thought and attention to this phase of the case. We believe the visitation provided is proper under the circumstances.

■ Husband's third issue for review is: "Whether the evidence preponderates against the Trial Court's finding as to the value of Husband's business."

The parties agree that Husband's business is marital property and the trial court placed a value of $200,000.00 on this marital asset. Husband is self-employed, doing business under the tradename of Commercial Painting Company, and as conceded, the value of that enterprise is marital property. The testimony of Mr. Stallings, the Husband's CPA, covers over 200 pages of transcript. He testified that in his opinion, the value of the business in 1990 was $177,160.00. He noted that this figure did not take into account the "tax liability", which, as revealed through further questioning, is Mr. Koch's individual income tax liability. In our view, the valuation of a sole proprietorship business is analogous to the valuation of a professional practice. In both enterprises, the conduct of the business or profession is dependent upon the owner thereof. The Middle Section of this Court considered the evaluation of a law practice in *Smith v. Smith*, 709 S.W.2d 588 (Tenn.App.1985). After noting that the physical assets and the accounts receivable (properly weighted) have ascertainable value, the Court considered the question of good will of the business:

> We find the position taken by the Wisconsin Court of Appeals in *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343 (App.1981) to be persuasive. The court said:
>
>> The concept of professional good will evanesces when one attempts to distinguish it from future earning capacity. Although a professional business's good reputation, which is essentially what its good will consists of, is certainly a thing of value, we do not believe that it bestows on those who have an ownership interest in the business, an actual, separate property interest. The reputation of a law firm or some other professional business is valuable to its individual owners to the extent that it assures continued substantial earnings in the future. It cannot be separately sold or pledged by the individual owners. The good will or reputation of such a business accrues to the benefit of the owners only through increased salary.
>>
>> \* \* \* \* \* \*
>>
>> There is a disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or another method of liquidating value.
>
> 309 N.W.2d at 354–55.
>
> Thus, the professional good will is not a marital asset which would be accounted for in making an equitable distribution of the marital estate.

709 S.W.2d at 591–92.

■ In the case at bar, there is evidence to establish the value of the business in accordance with the principles set forth in *Smith*. Obviously, a sole proprietorship is nothing more than an individual conducting a business for profit, which in turn becomes his income. It becomes difficult to differentiate between the value of the business and the income to the proprietor. For example, Husband asserts that at the time of trial he was not taking income from the business but was depleting the working capital. As a result, the questions presented concerning the valuation of the "business" as marital property and the determination of Husband's income for purposes of setting his child support obligation are inextricable.

■ Marital property is to be evaluated "as of a date as near as reasonably possible to the final divorce hearing date." T.C.A. § 36–4–121(b)(1)(A) (1991). In the case at bar, the record indicates that the business property consists of vehicles, painting equipment, inventory, accounts receivable, and certificates of deposit. The monthly balance

sheets of the business from December 1990 through May 1991 show a net asset value in excess of $300,000.00. Mr. Stallings testified that these statements would require "necessary adjustments" to make them consistent with the financial statement he used to render his opinion regarding value. Mr. Stallings underwent a probing cross-examination, some of which produced some rather questionable figures. The weight, faith and credit to be given to any witness's testimony lies in the first instance with the trier of fact. The credibility accorded will be given great weight by the appellate court. *Town of Alamo v. Forcum–James Co.*, 205 Tenn. 478, 327 S.W.2d 47 (1959); *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844 (Tenn.App.1982).

Husband testified that the value of the business was $105,000.00, which is rather conservative in our view because other proof established that one of the assets of the business was a certificate of deposit in the amount of $150,000.00. In any event, there is evidence in the record that the value of this marital asset has a range from $105,-000.00 to in excess of $300,000.00. In *Wallace v. Wallace*, 733 S.W.2d 102 (Tenn.App. 1987), the court said:

> The value of a marital asset is determined by considering all relevant evidence regarding value. *In re Marriage of Rosen*, 126 Ill.App.3d 766, 81 Ill.Dec. 840, 846–47, 467 N.E.2d 962, 968–69 (1984) and 27C C.J.S. *Divorce* §§ 566 & 569 (1986). The burden is on the parties to produce competent evidence of value, and the parties are bound by the evidence they present. *In Re Marriage of Deem*, 123 Ill. App.3d 1019, 79 Ill.Dec. 542, 546, 463 N.E.2d 1317, 1321 (1984); *In Re Marriage of Larkin*, 462 N.E.2d 1338, 1344 (Ind.Ct. App.1984); and *Martin v. Martin*, 358 N.W.2d 793, 798 (S.D.1984). Thus the trial court, in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted. *In re Marriage of Johnston*, [223] Mont. [383], 726 P.2d 322, 325 (1986) and *Hein v. Hein*, 366 N.W.2d 646, 650 (Minn.App.1985).

733 S.W.2d at 107.

Wife does not complain that the trial court's valuation of the business is too low, and the trial court's finding is certainly within the range of competent evidence submitted.

Husband's fourth issue and Wife's seventh issue are as stated in Husband's brief: "Whether the evidence preponderates against the Trial Court's finding as to Husband's income and the Court's deviation from the Tennessee Department of Human Services Child Support Guidelines taking into consideration the time that the Husband has the minor children in his custody."

The final decree ordered Husband to pay child support of $400.00 per month for each child, a total of $800.00. The trial court found that Husband's income was $4,000.00 per month; therefore, pursuant to the DHS Guidelines the presumed proper child support is $1,280.00 per month. The trial court orally announced that the enlarged visitation schedule warranted a reduction of this presumptive amount of approximately one-third, thus arriving at $800.00 per month in child support. Husband asserts that the trial court made an erroneous finding as to his income and also failed to make a proper deviation from the child support guidelines. Wife asserts that the trial court's finding as to Husband's income was correct but that there was no justification for deviation from the child support guidelines.

■ Husband argues that his withdrawals from the business in 1990 in the amount of $45,010.00 are "capital withdrawals," not income. He contends that his 1990 tax return reflects a loss in excess of $27,000.00 and that in fact he has no income, but to the contrary has a monthly deficit. He asserts that prior to the parties' separation, they lived on his withdrawals from his business that totalled $35,000.00 per year, which is the proper amount to use in assessing his income. The record reflects that in a time period prior to trial, Husband made monthly deposits in his personal bank account in excess of $6,000.00 and had expenditures in excess of $6,000.00, yet Husband argues that he has no income. The record suggests that Husband has quite a few expenditures paid out of his business account as well as fringe benefits connected with his business.

The DHS Guidelines provide that the gross income of the obligor spouse:

> shall include all income from any source (before taxes and other deductions), whether earned or unearned, and includes but is not limited to, the following: wages, salaries, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, workers compensation benefits, unemployment insurance benefits, gifts, prizes, alimony or maintenance, and income from self-employment. Income from self-employment includes income from business operations and rental properties, etc., less reasonable expenses necessary to produce such income. Depreciation, home offices, excessive promotional travel or car expenses, etc. should not be considered reasonable expenses.

Tenn.Comp.R. & Regs. ch. 1240–2–4–.03(3)(a).

Husband's 1990 tax return shows on Schedule C, Profit or Loss from Business, gross receipts in excess of $790,000.00 and gross business income in excess of $165,000.00. It does not go unnoticed by this Court that a business producing a gross income in excess of $165,000.00 per year should provide a nice income to the proprietor. Considering Husband's admitted withdrawal from his business in excess of $45,000.00 and the other benefits Husband has received from the business, the trial court's finding of $4,000.00 per month income is not excessive. If anything, this determination might be a little low, but bearing in mind the difficulty of establishing income under the circumstances of this case and Wife's agreement that $4,000.00 per month is correct, we do not find that the evidence preponderates against the trial court's finding in this regard.

■ The trial court deviated from the child support guidelines and stated for the transcribed record that the deviation was due to the enlarged visitation schedule he painstakingly prepared. The evidence does not preponderate against the trial court's finding that a deviation should be made and that the deviation made was proper. Although the trial court properly should have made a written finding concerning the reason for the deviation, the oral pronouncement by the court subsequently transcribed should suffice in this instance rather than sending this prolonged, hotly contested case back to the trial court solely for the purpose of written findings.

■ We will consider Husband's fifth issue for review and Wife's issue number nine together. Husband's issue is: "Whether the evidence preponderates against the Trial Court's awarding of Wife's attorney fees as alimony in solido." Wife's issue is: "Whether the Trial Court erred by not awarding Wife all of her attorney fees."

The final decree ordered Husband to pay $15,000.00 as part of Wife's attorneys' fees, which were in excess of $68,000.00. Husband asserts that Wife received liquid assets sufficient to pay her own attorneys' fees in total. He also asserts that Wife's unjustified conduct occasioned a very large part of the fees. Wife, on the other hand, contends that she should not be required to use these liquid assets to pay the fee and that Husband should pay the entire fee.

■ The record reveals that Wife's mother has paid in excess of $52,000.00 toward Wife's attorneys' fees and there is nothing to indicate that this was a loan to Wife; as a result, Husband argues this was in effect a gift to Wife. The proof is not clear as to what the status of this payment might be. The award of attorneys' fees is within the discretion of the trial court. *Fox v. Fox,* 657 S.W.2d 747 (Tenn.1983). In the division of marital property, Wife was awarded sufficient cash to pay her attorneys' fees; furthermore, Wife is gainfully employed. From our review of the record, we cannot find that the trial court abused its discretion in ordering Husband to pay $15,000.00 toward Wife's attorneys' fees and in failing to require Husband to pay the entire amount of the attorneys' fees.

■ Wife's eighth issue for review is: "Whether the Trial Court erred in its division of marital property pursuant to T.C.A. § 36–4–121, by awarding Wife only 45% of

the parties' marital assets." The final decree divided the marital estate 45% to Wife and 55% to Husband. In so doing the court stated that it found that "the Wife had not been a full partner at all times in the marriage and business and due to her leaving the Husband during different periods of time during the marriage." The Wife asserts that by this language it is evident that the trial court considered the fault of the Wife as a factor in the division of the marital estate, which is prohibited by Tennessee Code Annotated § 36–4–121(a)(1).

■ In making a division of marital property, the trial court is required to consider many factors. Tennessee Code Annotated § 36–4–121(c) (1991) provides:

In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as a homemaker or wage earner to be given the same weight if each party has fulfilled his or her role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

We do not interpret the trial court's statement as indicating that it considered fault on the part of the Wife as a factor in the division. To the contrary, it appears to this Court that the court's comment concerned factor number five above. The court has wide discretion in making a division of marital property. It appears to this Court that the trial court properly considered the factors involved and did not in any sense of the word abuse its discretion in the property division made.

■ Wife's final issue for review is "Whether the Trial Court erred by not awarding Wife any alimony." Wife has a college degree and is employed as a school teacher. She has been living with her mother since March of 1990 and as noted by the trial court did not produce evidence of need for alimony. The record does not preponderate against the trial court's finding in this regard.

The judgment of the trial court is affirmed and the case is remanded for such other proceeding as necessary. Costs of appeal are assessed against appellant.

HIGHERS and FARMER, JJ., concur.