# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION AT JACKSON

_____

|  |  |  |
|---|---|---|
| **DANA LYNNE BURLESON,** | ) | Henderson County Chancery Court |
|  | ) | No. 8618 |
| Plaintiff/Appellee. | ) |  |
|  | ) |  |
| VS. | ) | C. A. NO. 02A01-9601-CH-00021 |
|  | ) |  |
| **MICKEY DWAYNE BURLESON,** | ) |  |
|  | ) |  |
| Defendant/Appellant. | ) |  |
|  | ) |  |

**FILED**

**October 3, 1996**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

From the Chancery Court of Henderson County at Lexington.
**Honorable Joe C. Morris, Chancellor**

**James F. Butler,**
SPRAGINS, BARNETT, COBB & BUTLER, Jackson, Tennessee
Attorney for Defendant/Appellant.

**Carthel L. Smith, Jr.**, Lexington, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.** : (Concurs)
**LILLARD, J.** : (Concurs)

Defendant-Appellant, Mickey Dwayne Burleson ("Father"), appeals the trial court's judgment denying his petition to modify the child custody provisions of the parties' final divorce decree.

The parties were divorced in July 1993 by a final divorce decree which incorporated by reference the terms of the parties' marital dissolution agreement ("MDA"). In accordance with the terms of the MDA, Plaintiff-Appellee, Dana Lynne Burleson ("Mother"), was awarded "absolute and exclusive custody" of the parties' two minor children and the Father was awarded the marital home. The MDA required the Mother to quitclaim her interest in the marital home to the Father upon his payment of $8,700 to the Mother for her equity in the home. An amendment to the MDA, filed the same day the divorce decree was entered, required the Father to "provide babysitters for the children at his own expense in lieu of direct child support payments, the parties agreeing that said amounts would be equal."

In May 1994, the Father filed a petition to change custody and modify the final decree of divorce. At the evidentiary hearing held in February and March 1995, the Father testified that the Mother moved out of the marital home after the parties' divorce but that the children did not move with her. Instead, the children remained in the marital home, where the Father took care of them. The Father's mother (the children's paternal grandmother) took care of the children during the day while the Father worked. The Father provided the children with their basic needs, including clothing and medical expenses. The Father also involved himself with the children's classes and activities, but the Mother did not.

Father further testified that at the time of the divorce, the Mother was working the night shift. Pursuant to an agreement between the parties, the grandmother began watching the children at night while the Mother worked. The Mother was supposed to pick up the children after her shift ended, but she never did. The Mother sometimes called from work to see about picking up the children, but half of the time she failed to show up to get them. After about a week, the Father began picking up the children from the grandmother's house and taking the children home with him.

The Mother testified that, contrary to the Father's testimony, when the Mother moved

out of the marital home, the children moved with her into her new home. The Mother has moved a couple of times since the divorce, and each time the children have moved with her. Pursuant to the amendment modifying the MDA, the Father and the Mother agreed that the Father would not have to pay child support if the grandmother took care of the children while the Mother worked the night shift. Problems with this arrangement arose because, when it was time for the Mother to pick up the children, she often had trouble locating them. The Mother admitted that there were days when she did not pick up the children, but she explained that:

> When I would go to pick up the kids, they wouldn't be there. One would be here and one would be somewhere else. When [the Father] took them to his house, you could beat on the door. He wouldn't come to the door, notes on the door.
>
> . . . .
>
> You could call. There wouldn't be any answer one day. You would go there the next day. If you did find somebody, one would be with [the Father] and one would be [somewhere else].

At the time of the evidentiary hearing, the Mother no longer was working the night shift.

In June 1995, the trial court entered a judgment denying the Father's petition to change custody. In its judgment, the court gave the following reason for its ruling:

> As stated in Open Court, the Court feels that a [sic] both parents in this cause are fit and proper to have custody of the children, and it appears that the children have been spending a great deal of time with each one, and in particular, with [the Father] and [the grandmother].
>
> However, the Court is of the opinion that there has not been a material change of circumstances that the parties did not agree to, which was convenient to [the Mother's] work, and for economic reasons for [the Father]. [The Mother] agreed for [the Father] to babysit the children in lieu of child support, and she agreed for the children to stay with [the Father], and/or [the grandmother], when she worked the night shift. This might have been a mistake on her part, but not enough to take custody.
>
> Custody will remain with [the Mother], and [the Father] will pay according to the guidelines.

On appeal, the Father presents a single issue for our review:

Whether the trial court erred in denying [the Father's] petition to change custody and modify decree.

We review the custody issue presented in this case *de novo* upon the record, accompanied by a presumption of correctness of the trial court's findings of fact. *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. App. 1993); T.R.A.P. 13(d). In doing so, we recognize that "[t]rial courts are vested with wide discretion in matters of child custody and the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." *Koch*, 874 S.W.2d at 575.

In a custody modification proceeding, the comparative fitness analysis of the original custody proceeding is no longer determinative. Instead, the non-custodial parent has the burden of proving a material change in circumstances "compelling enough to warrant the dramatic remedy of changed custody." *Musselman v. Acuff*, 826 S.W.2d 920, 922 (Tenn. App. 1991). Applying the foregoing standard, we conclude that the Father has failed to meet this burden in the present case.

The Father contended at trial and on appeal that a material change in circumstances had occurred in that, contrary to the parties' expectations at the time they entered into the MDA, the Father has served as the children's primary care giver since the divorce. According to the Father, the children have continued to live in the former marital home with the Father and the Father, not the Mother, has continuously provided for the children's basic needs.

Based on the evidence presented at the hearing below, the trial court found that any change in circumstances resulted from the parties' agreement and did not warrant the remedy of changed custody. We agree. The amendment to the MDA, which required the Father to provide babysitters for the children in lieu of direct child support payments, was filed the same day the divorce decree was entered. The Mother testified that, pursuant to this amendment, the grandmother watched the children at night for a period of time during which the Mother was assigned to the night shift. Although this arrangement resulted in the children spending a great deal of time with the Father and the grandmother, the arrangement did not constitute a change in circumstances because it was agreed to by the parties at the time of the divorce. *See, e.g., Hall v. Hall*, 1995 WL 316255, at *2 (Tenn. App. 1995) (indicating that change in custody requires material change not reasonably

foreseen when original custody decision was made).

In affirming the trial court's custody decision, we note that much of the evidence was disputed regarding the Mother's attempts to pick up the children from the Father's house and the grandmother's house. As this Court recently stated,

> Custody decisions are among the most important decisions that courts make. They are factually driven and require a careful balancing of numerous considerations. *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990)[*overruled on other grounds by Aaby v. Strange*, 924 S.W.2d 623 (Tenn. 1996)]; *Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988)[*overruled on other grounds by Aaby v. Strange*, 924 S.W.2d 623 (Tenn. 1996)]; *Holloway v. Bradley*, 190 Tenn. 565, 571, 230 S.W.2d 1003, 1006 (1950); *Scarbrough v. Scarbrough*, 752 S.W.2d 94, 96 (Tenn. Ct. App. 1988). Appellate courts understand that these decisions often hinge on subtle nuances in the parties' demeanor and credibility, and we are, therefore, reluctant to second-guess trial courts who have observed the witnesses and assessed their credibility. *Gilliam v. Gilliam*, 776 S.W.2d 81, 84 (Tenn. Ct. App. 1988). We customarily decline to disturb custody decisions unless they are based on a material error of law or unless the evidence preponderates against them. *Hass v. Knighton*, 676 S.W.2d 554, 556 (Tenn. 1984); *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn. Ct. App. 1973).

*Hall*, 1995 WL 316255, at *2. We conclude that the evidence does not preponderate against the trial court's custody decision in this case.

The trial court's judgment denying the Father's petition to change custody is affirmed. Costs of this appeal are taxed to the Father, for which execution may issue if necessary.

                              _____

                              FARMER J

.

_____

CRAWFORD, P.J., W.S. (Concurs)

_____

LILLARD, J. (Concurs)