## IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT JACKSON

_____

|  |  |  |
|---|---|---|
| **IVA DELL BROWN McALEXANDER**, | ) | C. A. No. 02A01-9611-CH-00289 |
|  | ) | Madison County Chancery Court No. 50287 |
| Plaintiff/Appellant. | ) |  |
|  | ) | HON. JOE C. MORRIS, CHANCELLOR |
| VS. | ) |  |
|  | ) | **AFFIRMED AND REMANDED** |
| **KENNETH JACKSON** | ) |  |
| **McALEXANDER**, | ) |  |
|  | ) | OPINION FILED: |
| Defendant/Appellee. | ) |  |
|  | ) |  |

**FILED**

**June 2, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**Jesse H. Ford, III**, FORD & MAYO, Jackson, Tennessee, for Defendant/Appellant.

**Mary Jo Middlebrooks**, MIDDLEBROOKS & GRAY, P.A., Jackson, Tennessee, for Plaintiff/Appellee.

_____

### MEMORANDUM OPINION[1]

_____

**FARMER, J.**

Following the trial court's order granting the parties an absolute divorce, distributing the parties' property, awarding custody of the parties' four minor children to Iva Dell Brown McAlexander (the Mother), and ordering Kenneth Jackson McAlexander (the Father) to pay child support to the Mother pursuant to the Child Support Guidelines, Father appealed. The sole issue presented by the Father is whether the trial court erred in granting custody of the parties' four children to the Mother. We affirm.

The Father's primary objection to the Mother being awarded custody of the children is that the Mother and children currently reside in the home of Jonathan McAlexander, the Father's 36-year-old son by a previous marriage and, hence, the Mother's stepson. The Mother left the Father

---

[1]**Rule 10 (Court of Appeals). Memorandum Opinion**. -- (b) The Court, with concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

1

in January 1995 and, taking the children with her, moved in with the stepson. In March 1995, the Mother filed this complaint for divorce.

Based on his objection to the Mother's living arrangements, the Father filed a motion for temporary custody of the children pending the divorce. After conducting a hearing on the matter, the trial court entered an order which (1) permitted the Mother to retain temporary physical custody of the parties' children; (2) ordered the Father to pay temporary child support to the Mother; and (3) appointed a guardian ad litem to represent the interests of the children.

At the final divorce hearing in April 1996, the parties presented evidence on the custody issue and the Guardian Ad Litem presented her report. Although the Mother previously had described her living arrangement as temporary, she acknowledged at trial that she and the children still were residing with the stepson. Although the trial court expressed concern about the children's environment, in its subsequent order the court awarded the Mother sole custody of the parties' minor children and granted the Husband "reasonable and liberal visitation."

On appeal, the Father objects to the Mother's current living arrangements for herself and the children on several grounds, all related to the stepson. The Father describes the relationship between the Mother and the stepson as "incestuous." The Father also contends that the relationship between the Father and the stepson, which at best could be described as acrimonious, is having a negative impact on the Father's relationship with the children. In this regard, the Father contends that he is being deprived of a meaningful relationship with his children because the stepson has replaced him as the father figure in the children's lives. Additionally, the Father suggests that the stepson is a negative influence on the children because of the attitudes expressed by the stepson in a written response to the Guardian Ad Litem's report.

Our review of the trial court's decision to award custody to the Mother is governed by Rule 13(d) T.R.A.P. *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Ruyle v. Ruyle*, 928 S.W.2d 439, 441 (Tenn. App. 1996); *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. App. 1993). This standard requires us, in conducting a *de novo* review of the record, to presume that the trial court's

2

findings of fact are correct, unless the evidence in the record preponderates otherwise. *Id*. In applying this standard of review, we recognize that "[t]rial courts are vested with wide discretion in matters of child custody and the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." *Koch*, 874 S.W.2d at 575. Our paramount concern, and that of the trial court, is the welfare and best interests of the parties' minor children. *Ruyle*, 928 S.W.2d at 441; *Koch*, 874 S.W.2d at 575. This determination necessarily turns on the particular facts of each case. *Koch*, 874 S.W.2d at 575.

After carefully reviewing the record in this case, we conclude that the evidence does not preponderate against the trial court's decision to award custody of the parties' minor children to the Mother. Contrary to the Father's contention, the evidence fails to support the conclusion that the Mother's current living arrangement with the stepson has negatively impacted the Father's relationship with the children. First, we note that the record contains virtually no evidence to support the Father's contention that the Mother's relationship with the stepson is in any way incestuous. At the hearing below, the Mother consistently denied having any type of sexual or romantic relationship with the stepson. The Mother testified that the stepson has a five-bedroom house. The Mother and the parties' three daughters sleep in two bedrooms on one side of the house, and the stepson and the parties' 14-year-old son sleep in two bedrooms on the other side. The middle part of the house consists of a common living area. One of the Mother's friends testified, without objection, that she believed the Mother was telling the truth about her relationship with the stepson. Significantly, in orally presenting her report at trial, the Guardian Ad Litem, who had worked on the case for a period of ten months, stated that in her conversations with the Father the Father never indicated that he believed there was any type of illicit relationship between the Mother and the stepson. Father points to no evidence, other than the fact that the Mother and the stepson live in the same house, to support his assertion that they are involved in an incestuous relationship.

We also conclude that the evidence fails to support the Father's contention that the stepson has negatively influenced the children or their relationship with the Father. At trial, the Mother testified that the stepson's relationship with the children is as a big brother, that he loves the children and is very close to them, that he has not tried to alienate the children from the Father, and

3

that his relationship with the Father has not adversely affected the children. The Guardian Ad Litem's report corroborated the Mother's testimony. In presenting her report, the Guardian Ad Litem stated that the stepson is very close to the children, that the children love their big brother, and that the Guardian has never perceived anything other than a big-brother relationship between the stepson and the children. The Guardian Ad Litem also stated that she saw no evidence that the stepson's attitude toward the Father has affected the children or that the stepson is trying to influence the children against the Father. The children's only negative comments about the Father related to the Father's behavior when he is with the children. The Guardian opined that the temporary living arrangement with the stepson has actually been good for the children in that it has provided needed stability and security, although she believes that at some point the Mother should establish a home for herself and the children. Moreover, the Father's own testimony failed to reveal that his relationship with the stepson has negatively affected the children. Although the Father is not welcome in the stepson's house, there is no evidence that this restriction has interfered with the Father's exercise of visitation rights with the children. In fact, the only visitation problems recounted by the Father were due to the Mother's actions and had no relation to the stepson. The Father has spoken to the stepson only once since the Mother and the children moved into the stepson's home. Finally, although we agree that the stepson's written response to the Guardian Ad Litem's report is somewhat unusual, there is no evidence that the attitudes expressed therein have been communicated to the children or have had any negative impact on them.

We acknowledge that the post-separation living arrangements chosen by the Mother for herself and the children is unique. Nevertheless, based on the evidence presented in this case, as well as the report of the Guardian Ad Litem, we affirm the trial court's decision to award custody of the parties' minor children to the Mother.

The trial court's judgment is affirmed. Costs of this appeal are taxed to Appellant, for which execution may issue if necessary.

_____
FARMER, J.

4

_____
HIGHERS, J. (Concurs)


_____
LILLARD, J. (Concurs)