# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### JULY 9, 2001 Session

## WENDY KING v. TIMOTHY KING

### Direct Appeal from the Circuit Court for Warren County
### No. 9805; The Honorable Charles Haston, Judge

---

### No. M2000-00424-COA-R3-CV - Filed September 11, 2001

---

This appeal arises from a divorce and custody dispute. The trial court awarded custody of the parties' four minor children to the father, and the court awarded the mother liberal visitation. The mother appeals the decision of the court below. For the following reasons, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Robert W. Newman, John P. Partin, McMinnville, TN, for Appellant

Keith S. Smart, McMinnville, TN, for Appellee

### OPINION

### Facts and Procedural History

The parties in this case are Wendy King (Mother), and Timothy King (Father). The parties were married on July 21, 1987, and they separated in June of 1998. There were four minor children born of the marriage.

During the numerous divorce and custody hearings, the trial court heard evidence that was damaging to both parties. For example, the court heard testimony about Mother's obsessive use of the internet. Mother corresponded regularly with several internet pen pals and internet lovers, and once she described herself as a "porn star" to one of her internet acquaintances. Sometimes, men Mother met over the internet would travel to her home for extended visits. Also, Mother traveled to various states to meet men she had met over the internet, and she admitted to having sexual

relations with two men she had met over the internet. While Mother was away visiting with her internet lovers, Father would stay home and take care of the children.

There was also testimony that was very damaging to Father. For instance, Father fired a pistol in the home to imitate the act of suicide. Additionally, Father made a video of himself masturbating while his infant child was present in another room in the home. While Father also admits to engaging in unscrupulous behavior on the internet, he denies having extramarital affairs with any of his internet acquaintances.

On December 15, 1998, the trial court granted temporary legal custody of the parties' four minor children to the Department of Children's Services with temporary physical custody to remain with Mother. On June 8, 1999, the parties were granted a divorce on the grounds of inappropriate marital conduct. On November 24, 1999, the court ordered that physical custody of the children be removed from Mother and be placed with the paternal grandparents, Cecil and Evelyn King. Finally, on January 28, 2000, the trial court awarded physical and legal custody to Father, and the court granted liberal visitation to Mother. The court also ordered Mother to pay $30.00 per week in child support.

Mother appeals the decision of the trial court, and presents the following issues for our review:

I.      Whether the trial court erred in considering evidence previously excluded as inadmissible hearsay.
II.     Whether the weight of the evidence preponderates against the decision of the trial court.

Additionally, Father presents the following two issues for our review:

I.      Whether this court should uphold the trial court's ruling since Mother failed to provide a full transcript or statement of the evidence.
II.     Whether the trial court erred in awarding child support which deviated more than ten percent from the Guideline amounts without a written statement of the reasons for such deviation.

## Standard of Review

Our review of the trial court's custody decision is governed by Rule 13(d) of the Tennessee Rules of Appellate Procedure. See Ruyle v. Ruyle, 928 S.W.2d 439, 441 (Tenn. Ct. App. 1996); Koch v. Koch, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). Rule 13(d) requires this court, in conducting a *de novo* review of the record, to presume that the trial court's factual findings are correct, unless the evidence in the record preponderates otherwise. See TENN. R. APP. P. 13(d). In applying this standard of review, we are mindful that "[t]rial courts are vested with wide discretion in matters of child custody" and that "the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." Koch, 874 S.W.2d at 575. Because "[c]ustody and

visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility" during the proceedings, appellate courts "are reluctant to second-guess a trial court's decisions." Gaskill v. Gaskill, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). The courts' paramount concern in a custody case is the welfare and best interest of the parties' minor children. See Ruyle, 928 S.W.2d at 441; Koch, 874 S.W.2d at 575. This determination necessarily turns on the particular facts of each case.

## Law and Analysis

First, we will address the custody issue. We note that Father urges us to uphold the trial court's ruling because Mother has failed to provide the full transcript or statement of the evidence as required by Rule 24(a) of the Tennessee Rules of Appellate Procedure. Specifically, Mother failed to include a transcript of the May 11, 1999, trial at which the divorce was granted. Father argues that evidence of Mother's lack of parental fitness was introduced at this hearing. Therefore, Father argues that we should uphold the trial court's ruling since we do not have this portion of the transcript. Notwithstanding this fact, we do have a substantial record, and we can properly determine the case based upon the record before us. Father could have designated other parts of the record if he wished to do so. See Rule 24(a), Tennessee Rules of Appellate Procedure.

We now turn to Mother's assertion that the trial court erred in considering evidence previously excluded as inadmissible hearsay. This argument arises from four anonymous letters that were sent to the Department of Children's Services. The four letters contained serious allegations against Mother. Specifically, one of the letters alleged that Mother had made death threats toward herself and the children. The four anonymous letters then became the basis for a "client assessment" conducted by a mental health center of one of the minor children. The assessment was very damaging to Mother. Dr. Joseph D. LeBarbera also reviewed the anonymous letters in preparation of his custody evaluation that he prepared for the court. This report was also unfavorable to Mother. Mother's counsel objected to the mental health center's report and the report by Dr. LeBarbera based upon the hearsay contained in the anonymous letters. The trial judge sustained the objection and stated that he would "disregard" both reports. In the trial judge's final custody order, he stated the following: "[t]here have been several hearings, numerous exhibits, documents, and written expert opinions offered over the past months and the Court has considered all of them." From this statement by the trial judge, Mother argues that the hearsay reports that were previously excluded by the judge were relied upon by the judge in his ultimate decision as to custody. We disagree. The record clearly reflects that the trial judge disallowed the reports at issue. In ruling on Mother's objection to the reports, the trial judge stated "[I]'ll disregard it." We do not accept Mother's invitation to read into the judge's blanket statement that he considered all the evidence, when the judge clearly disallowed the reports that were based upon the anonymous letters. Therefore, this issue is without merit.

Next, Mother argues that the weight of the evidence preponderates against the decision of the trial court. We note that in making its custody decision, the trial court is required to engage in

a "comparative fitness" analysis. See Gaskill, 936 S.W.2d at 630. This factually driven inquiry requires the court to carefully weigh, *inter alia*, the following considerations:

> (1) The love, affection and emotional ties existing between the parents and child;
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
> (3) The importance of continuity in a child's life and the length of time the child has lived in a stable, satisfactory environment. . . .;
> (4) The stability of the family unit of the parents;
> (5) The mental and physical health of the parents;
> (6) The home, school and community record of the child;
> (7) The reasonable preference of the child if twelve (12) years of age or older. . . .
> (8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . . .
> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
> (10) Each parent's past and potential or future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

TENN. CODE ANN. § 36-6-106 (Supp 2000). The trial court heard testimony from many parties to determine what custody arrangement would be in the children's best interests. In deciding that placing custody with Father was in the children's best interest, the trial judge stated the following:

> Though the mother still maintains a relationship with a man she met through the Internet under curious circumstances, she insists the arrangement is permanent. However, there remains great doubt that her situation is resolved sufficiently to establish the kind of home and environment these children so desperately need . . . In all, the mother's future is unsettled and unresolved, whereas the father's - and hence the Children's - appear more determined and secure.

> The father, with all his shortcomings, has nonetheless cooperated with the Court through the DCS. He has maintained gainful and steady employment, is presently living in a home near the paternal grandparents where the children have close and substantial care. Their educational needs are being fully met in their school and,

generally, the father has in most respects made an earnest and good faith effort to gain control of his life with the views of becoming an involved and nurturing father.

We once again note that since "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility" during the proceedings, appellate courts "are reluctant to second guess a trial court's decisions." Gaskill, 936 S.W.2d at 631. In the instant case, we agree with the trial court's award of custody to Father. While the record does contain damaging evidence about both parties, we agree with the trial court that Father has made the best effort to gain control of his life and put his children first. It is also evident from the court's ruling that the trial judge was concerned with continuity in the children's lives. Stability and continuity are of the utmost importance in custody cases. See id. at 630. Although continuity does not trump all other factors, see id. at 630, "it remains an important consideration." Grover v. Grover, No. 01A01-9804-CH-00197, 1999 WL 257653, at *5 (Tenn. Ct. App. Apr. 30, 1999). Due to the foregoing, we affirm the decision of the trial court to grant custody of the minor children to Father.

Now, we turn to Father's child support issue. Father argues that the trial court erred in awarding child support which deviated more than ten percent from the child support guideline's amount without a written statement of the reasons for such deviation. In the final order, the trial court ordered that "[t]he mother will pay child support in the amount of $30.00 per week. . . ." It is apparent from the record that Mother is employed as a school teacher earning approximately $26,000.00 per year. With four children, the amount of $30.00 per week in child support as ordered by the trial judge is clearly a downward deviation from the presumptive guideline amount of 46% of the obligor's income. See TENN. COMP. R. & REGS. Tit. 10, Ch. 1240-2-4-.03(5). Statutory authority provides for a rebuttable presumption that the percentage amount of child support provided in the guidelines is the correct amount. However, "[the guidelines] are subject to deviation upward or downward when the assumptions on which they are based do not pertain to a particular situation." Nash v. Mulle, 846 S.W.2d 803, 805 (Tenn. 1993). In order to justify a deviation from this amount, however, the trial court must make written findings outlining the reasons for the deviation. These reasons must show that the deviation is either in the best interest of the children; that the child support guidelines would be unjust or inappropriate; or needed to maintain equity between the parties. See TENN. CODE ANN. § 36-5-101(e)(1) (Supp. 2000).[1] We are unable to locate any written

---

[1] Section 36-5-101(e)(1) of the Tennessee Code provides:

In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties. Findings that the application of the guidelines would be unjust or inappropriate shall state the amount of support that would have been ordered under the child support guidelines and a justification for the variance from the guidelines.

findings in the record articulating the reasons that the trial judge chose to deviate downward from the child support guidelines. As a result, we reverse and remand this issue to the trial court for further proceedings consistent with this opinion.

### Conclusion

For the aforementioned reasons, we affirm in part, reverse in part, and remand this case to the trial court for further proceedings consistent with this opinion. Costs on appeal are taxed to Mother, for which execution may issue if necessary.

 

_____
ALAN E. HIGHERS, JUDGE