IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 15, 2017

## IN RE: AUTUMN B.

**Direct Appeal from the Juvenile Court for Hamilton County**
**No. 269-765     Robert D. Philyaw, Judge**

No. E2017-00019-COA-R3-CV

This is a child custody case. Mother appeals the trial court's determination that Father should be designated as the child's primary residential parent. Father requests attorney's fees for defending this appeal. Discerning no error, we affirm the decision of the trial court. This Court deems the appeal frivolous and remands this matter to the juvenile court to determine attorney's fees and costs to be awarded to Father.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, J.J., joined.

Alan R. Beard, Chattanooga, Tennessee, for the appellant, Cintia L. C.

Mary Sullivan Moore, Chattanooga, Tennessee, for the appellee, Jacob K. B.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

Appellant Cintia L. C. ("Mother") and Appellee Jacob K. B. ("Father") have one child together (the "Child"), who was born on September 17, 2015. The parties were never married but cohabitated between February and December 2015. Mother has another son from a marriage that pre-existed the parties' relationship. Father has a daughter and a son from an earlier relationship.

Shortly after the birth of the Child, Mother and Father's romantic relationship began to unravel, and they ultimately separated in late December 2015. On January 4, 2016, Mother secured an *ex parte* temporary restraining order against Father that was

subsequently dismissed by the court. In the following weeks, Mother withheld the Child from Father and refused to allow visitation. In light of this, Father filed a petition for custody of the Child on January 13, 2016, in the Juvenile Court for Hamilton County, Tennessee. Father simultaneously filed a motion to prevent Mother from leaving the jurisdiction of the court with the Child in light of statements Mother made about moving to Texas with the Child. The parties entered into a mediated agreement on January 18, 2016, which provided that Father could begin seeing the Child for one or two hours at a time during supervised visits pending the outcome of his petition for custody. According to Father, he agreed to supervised visitation at the time because supervised visitation was better than not being allowed to see his Child at all.

Father's petition was initially heard by a Magistrate for the juvenile court. On April 12, 2016, the Magistrate rendered his findings and recommendations, which essentially granted Father's petition, designated him as primary residential parent, and adopted Father's proposed parenting plan. The juvenile court subsequently entered an order adopting the recommendations of the Magistrate with only minor changes. According to this parenting plan, parenting time of the Child was shared equally between Mother and Father, and Father was designated as the Child's primary residential parent.

Mother thereafter requested that the juvenile court conduct rehearing of the proof presented to the Magistrate on Father's petition for custody of the Child. The juvenile court granted Mother's request and held a thorough *de novo* rehearing of the Magistrate's findings and recommendations, which took place over the course of three days – August 11, September 1, and October 20, 2016. The court heard the testimony of Mother, Father, and more than ten other witnesses, and several exhibits were entered into evidence for the court's review. At the conclusion of the proof, the court took the matter under advisement. The court then entered its findings of fact and conclusions of law on December 8, 2016. The juvenile court's order is a detailed eleven-page analysis of the issues raised by the parties in this case in which the court made a "determination of the child's best interest by applying the factors in TCA § 36-6-106, in order to determine custody and a parenting schedule." Further, the juvenile court stated its goal of crafting "a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child." The court then went through each best interest factor, setting forth its findings on each factor and the reasons therefor. The court essentially found that all applicable factors weighed evenly for both parties with the exception of Tennessee Code Annotated section 36-6-106(a)(2) and (9), which favored Father. The court went on to hold as follows:

> This matter is between two parties who have separated and appear to be adjusting to the shift in their relationship. Furthermore, according to testimony during trial, the only current discrepancy that the parties have is

related to changes in schedules which may require future accommodation. Otherwise, it is the finding of the court that the parties have the disposition to co-parent equally in the best interest of their daughter.

As such, the court finds the following regarding the parenting plan in this matter:

The father shall be designated as primary residential parent.

Each parent will spend roughly 182.5 days with the child . . . .

Mother now appeals the trial court's decision designating Father as the Child's primary residential parent and giving the parties equal parenting time with the Child.

## II. ISSUES PRESENTED

Mother presents the following issue for review on appeal, which we have restated and consolidated:

Whether the trial court erred in designating Father as the primary residential parent of the Child?

Father presents an additional issue, which we have restated:

Whether Mother's appeal is frivolous such that Father should be awarded his attorney's fees incurred on appeal pursuant to Tennessee Code Annotated section 27-1-122 ?[1]

## III. STANDARD OF REVIEW

In nonjury cases, this Court's review is *de novo* upon the record of the proceedings in the trial court, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are afforded no such presumption. *Campbell v. Florida Steel,* 919 S.W.2d 26, 35 (Tenn.1996).

---

[1]Father also requested that we deny Mother's initial request for oral argument before this Court. This issue was disposed of, however, by agreement of the parties, and the case was not heard at oral argument.

## IV.   DISCUSSION

### A.   <u>Primary Residential Parent</u>

As we did in *Sansom v. Sansom*, we begin with the following observations of Mother's arguments and brief submitted on appeal:

> At the outset of our analysis, we note that, particularly regarding the issue of what is in the Child's best interest, [Mother] appears to be asking this Court to reevaluate each fact heard by the trial court and simply reach a different conclusion than that of the trial judge. The vast majority of [Mother's] arguments do not take into account the deferential standard of review by which we assess a trial court's decisions regarding child custody. *See Koch v. Koch,* 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993) ("Trial courts are vested with wide discretion in matters of child custody and the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion."). Appellate courts are not inclined to relitigate factual issues on appeal that were reasonably resolved by the trier of fact, which, in this case, was the trial judge. *See* Tenn. R. App. P. 13(d). To that end, we find [Mother's] arguments to this Court that he simply does not agree with the conclusion reached by the trial court to be unavailing.

*Sansom v. Sansom,* No. M2016-01111-COA-R3-CV, 2017 WL 1948690 at *4 (Tenn. Ct. App. May 10, 2017) (*no perm app. filed*).

Notwithstanding, we turn to Mother's contention that the trial court erred in weighing the factors of Tennessee Code Annotated section 36-6-106 to determine the best interest of the Child. Tennessee Code Annotated section 36-6-106 states that when a court is determining what is in a child's best interest, a court shall consider all relevant factors, including fifteen (15) that are expressly written into the statute for a court's consideration. *See* Tenn. Code Ann. § 36-6-106 (a)(1) through (15). In the case at bar, the trial court took great care to articulate and analyze each one of these factors. Mother appeals only the trial court's determinations with respect to factors (2), (5), and (9).

> **(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-**

4

**child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order.**

With respect to this factor, the juvenile court found as follows:

This factor weighs more heavily in favor of the father. Although the mother had significant parenting responsibilities, the Court cannot dismiss her actions that led to the unfortunate denial of parenting time for the father early in this litigation in such an acrimonious way. The Court also finds that the mother acted inappropriately in several instances involving exchanges and her unannounced visits to father's home. However, it is the Court's belief that these parents can adequately co-parent. Additionally, the parties live and work in close proximity to each other and testimony by [Father] reflected that they are able to adjust their work schedule based on their family needs.

Mother takes issue with the juvenile court's characterization of her actions following her separation from Father as denying Father parenting time "in such an acrimonious way." Mother points out that Father did not file a petition for custody of the Child until January 13, 2016, and that the parties attended mediation five days later and temporarily resolved their parenting issues pending further orders of the court. According to Mother, the "expedient fashion" in which she and Father resolved their differences at mediation is proof that she had no intent to deprive Father of parenting time. To the contrary, we find ample evidence in the record to support the court's conclusion that Mother initially withheld the Child from Father in an acrimonious manner. Prior to the parties' romantic split, the couple lived together with the Child and shared parenting responsibilities of the Child. After their break-up, Mother completely withheld the Child from Father for approximately four weeks, took out an *ex parte* restraining order against Father (that was subsequently dismissed) without proof of any history of violence, and then only allowed Father to see the Child in supervised visits for one or two hours at a time after the parties' mediation. All of this coincided with Mother and/or her attorney speaking negatively about Father to the news media and launching at least two internal affairs investigations against Father at his workplace. We agree with the juvenile court's characterization of Mother's behavior in the months following her separation from Father as being "acrimonious" in nature.

5

Mother also disputes the juvenile court's finding that she acted "inappropriately in several instances involving exchanges and her unannounced visits to father's home." Father and his current girlfriend testified that Mother's visits during Father's parenting time were uninvited and took place both early in the morning and late at night. Mother contests the juvenile court's finding on this issue because she was dropping in on Father's parenting time in order to provide the Child with breast milk. Therefore, Mother argues, the court's "categorization of Mother's visits as 'unannounced' is *not entirely accurate*." (Emphasis added.) Nevertheless, Mother's rationale for appearing at Father's house uninvited makes her visits no less "unannounced." She could have easily called and arranged with Father or her own attorney a time to drop off breast milk. Also, whether or not Mother feels that the juvenile court's characterization of her actions is "entirely accurate" is not the standard by which we review best interest determinations on appeal. We discern no abuse of discretion in the court's weighing this factor in favor of Father.

**(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities.**

The trial court held:

This factor preponderates in favor of both parties in that they have generally shared equal amounts of time with the child with the exception of the brief period during which a temporary restraining order was in place during which time [Father] had some supervised [and] some unsupervised visitation. The Court notes that they have shared relatively equal amounts of time with the child despite her tender age and the fact that [Mother] was breastfeeding. This demonstrates a willingness to cooperate and an implicit trust between the parties.

Mother disputes the juvenile court's finding that this factor weighed equally in favor of both parties and asserts that the court should have determined this factor weighed in her favor. The gist of Mother's argument on this point is that she takes better care of the Child's medical needs than Father. In her appellate brief, Mother details specific instances in which she felt Father should have been more proactive when the Child was ill or allegedly injured. Mother concludes from these incidents that the "evidence in the record unequivocally establishes a pattern of behavior whereby Father does not tend to the child's medical needs appropriately." However, the trial court heard a substantial amount of testimony regarding Mother's allegations of the Child's injuries/illnesses and obviously determined that Father's course of action was not inappropriate. We also note that Mother's ex-husband, who is the father of her older child, testified regarding his own son that Mother "probably takes him to the doctor when he – when I may not take him or

6

I may think he does not need to go." A trial court is in the best position to make these types of judgment calls, and we will not disturb them on appeal absent a clear abuse of discretion. Mother makes no compelling argument that the trial court abused its discretion in weighing this factor.

> **(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities.**

The court held:

> This factor preponderates in favor of [Father], as according to testimonial evidence presented during trial, he has 50/50 parenting time with his children from a previous relationship and no significant incidents were reported as to their interaction with the child. [Mother], however, is in the process of obtaining help with her older son's interaction with [the Child] after an apparently isolated incident when she was two months old.

Mother argues that the trial court erred in finding that this factor weighed in favor of Father rather than in her favor on two factual bases. First, Mother recounts her own testimony regarding an incident between her older son and the Child, the facts of which are unnecessary to recount here, and asks this Court to essentially hold that, because this was an isolated accident, the juvenile court erred in considering this event at all. We remind Mother that the trial court did in fact note that this was an "isolated" incident between her children. Furthermore, whether it was an accident or not, the fact remains that Mother's older son inflicted an injury on the Child that resulted in the Child being taken to the emergency room. The juvenile court properly considered this incident under a statutory factor that requires a court to examine the Child's "interactions and interrelationships with siblings." *See* Tenn. Code Ann. § 36-6-106(a)(9).

Second, Mother avers that the court erred in weighing this factor because "the trial court failed to mention that the Mother has full custody of her son, which should, at the very least be given as much weight and significance as Father's current relationship with his other children. Accordingly, the Court should have found that this factor weighed in favor of Mother." However, Mother has provided no citation to the record to support her assertion that she has "full custody" of her other son, and we have found nothing in the record that supports this either. To the contrary, Mother's ex-husband, who is the father of her older son, testified that he and Mother co-parent their son. Father's testimony corroborated this. Regardless, the court's silence on Mother's parenting arrangement with her ex-husband is not an abuse of discretion that would require this factor to be

weighed in favor of Mother. Our review of the record supports the trial court's determination that this factor weighs in Father's favor, and Mother makes virtually no argument, and certainly no persuasive one, to support her position that this factor weighs in her favor.

Given the above, the juvenile court did not err in splitting parenting time evenly between the two parents and designating Father as primary residential parent.

## B. **Attorney's Fees on Appeal**

Father asserts that Mother's appeal is frivolous and has requested that this Court award him damages, including the attorney's fees he has incurred on appeal. The determination of whether to award attorney's fees on appeal is within the sole discretion of the appellate court. We respectfully decline to do.

### IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the juvenile court in all respects. Because we deem this appeal frivolous, we remand this case to the juvenile court for a determination of the amount of attorney's fees and costs to be awarded to Father. Costs of this appeal are taxed to Mother, and her surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE

8