# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

September 22, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

BRENDA F. SANDUSKY   )
           )
  Plaintiff/Appellant,   )   Appeal No.
           )   01A01-9808-CH-00416
v.           )
DANNY J. SANDUSKY   )   Wayne County Chancery
           )   No. 7900
  Defendant/Appellee.   )
           )

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT
FOR WAYNE COUNTY

THE HONORABLE JIM T. HAMILTON PRESIDING

W.C. KEATON
102 NORTH COURT STREET
HOHENWALD, TENNESSEE 38462

  ATTORNEY FOR PLAINTIFF/APPELLANT

JAMES Y. ROSS, SR.
102 PUBLIC SQUARE NORTH
WAYNESBORO, TENNESSEE 38485

  ATTORNEY FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**

       PATRICIA J. COTTRELL, JUDGE

CONCUR:

CANTRELL, J.
KOCH, J.

# OPINION

This post-divorce proceeding involves questions of child support, payment of college expenses for a child over the age of majority, and payment of attorney fees and costs. Brenda Sandusky ("Mother") brought the underlying contempt action alleging her former husband, Danny Sandusky ("Father"), failed to pay the previously ordered amount of child support. Father asserted a counter-petition seeking a reduction in his child support payments. After several hearings, the trial court substantially reduced Father's child support obligation, ordered Father to pay the specific college expenses of his daughter, ordered payment of child support arrearage at $100 per month, and declined to award Mother attorney fees. Mother appealed this disposition. For the following reasons, we reverse and remand.[1]

When the parties were divorced on April 18, 1988, on the ground of irreconcilable differences, Father was the sole owner of Sandusky Trucking Company and an independent timber contractor. At that time, the parties' two children, a son and a daughter, were minors. The parties' Marital Dissolution Agreement ("MDA") specifically addressed their care and support, granting Mother physical custody while Father agreed to reimburse Mother for all reasonable expenditures associated with the support and maintenance of the children.

This arrangement gave rise to Mother's first contempt petition. It was

---

[1] As a preliminary matter, we observe that less than the entire record below was designated to be part of the record on appeal. *See* Tenn. R. App. P. 24 (a). Even so, Father unsuccessfully objected to the extent of the record so designated, arguing that it should be limited to only those issues raised in his July 1997 counter-petition for modification and Mother's June 1997 contempt petition. Nevertheless, Father attached some additional, uncertified documents to his brief. It should be noted that this court's review is limited to the record presented to the trial court and designated for inclusion in the appellate record. *See id.* No motion to supplement the record on appeal was filed. *See* Tenn. R. App. P. 24 (e).

filed in January 1994, alleging that Father refused to reimburse Mother for more than $15,000 in reasonable child care expenses. Father filed a counter-complaint seeking modification of his child support obligation. After a hearing, the trial court ordered Father to reimburse $10,000 of Mother's expenditures and set his child support obligation at a definite monthly payment of $2,666.67. This court affirmed the trial court's decision, including, specifically, the trial court's attributing to Mr. Sandusky's income from the trucking company he had transferred upon inadequate consideration to his father. *Sandusky v. Sandusky*, Appeal No. 01-A-01-9605-CH-00209, 1996 WL 730288 (Tenn. App. December 20, 1996) (no Tenn. R. App. P. 11 application filed).

Mother filed a second successful petition for contempt for nonpayment of child support in March 1996, resulting in a finding of contempt on April 22, 1996. In March 1997, Father was again held in contempt for failure to comply with the 1996 order requiring him to pay child support. After noting that Father had effectively stated in open court that he had no intention of complying with the orders to pay the amounts he owed Mother, the court found him in contempt and ordered him to pay $46,864.96 in arrearage.

After an April 1997 hearing, the court determined that Father still owed $23,648.27 and again ordered him to pay the arrearage immediately. The court found that Father had conveyed all of his interests in real property to his new wife and to relatives. The court agreed that when the oldest child, who had reached her majority, graduated from high school, Father's child support obligation would be reduced and ordered said reduction from $2,666.67 to $1,750. The court also continued the case for later consideration of Father's petition to reduce child support payment, stating that if any reduction were later granted, it would be applied retroactively.

After the daughter graduated, instead of paying $1,750, Father began paying $688 per month, which he asserted was 21% of his income. Mother then sought contempt sanctions on the ground that Father was behind in his child support payments.

When the daughter chose to attend Columbia State Community College and Father limited his support to tuition, books and $600 per month in living expenses, Mother added a claim that Father had breached the MDA, which contained a provision obligating Father to pay the reasonable expenses associated with the children's college educations.

In December 1997 and January 1998, the trial court held hearings on the various outstanding issues. After the hearings, the court reduced Father's child support payment from $1,750 to $865. The court ordered Father to pay for tuition and books and $600 per month toward his daughter's college education pursuant to the MDA. The trial court permitted Father to pay his $6,372 arrearage in $100 per month payments. The court did not award any attorney fees. After the trial court denied Mother's motion to alter and amend the judgment, she commenced this appeal.

## I.

Ordinarily our review of a trial court's findings of fact is *de novo* with a presumption of correctness. Tenn. R. App. P. 13 (d). Here, the trial court made no factual findings when disposing of this case, which leaves nothing to trigger the presumption of correctness. *See Archer v. Archer*, 907 S.W.2d 412, 416 (Tenn. App. 1995). Accordingly, our review is plenary.

## II.

The first issue arising from the order under appeal is whether the trial court correctly determined the monthly amount of support due after May 1997.

In April of 1997, the court recognized that Father's support obligation would be reduced as of the June 1997 payment, because the 18-year old daughter would be graduating from high school, leaving only one minor child for whom child support was due. Therefore, the court reduced Father's monthly payment to $1,750. This amount constituted 21% of Father's net income as of the last order setting support ($100,000). The court, however, delayed ruling on Father's pending motion to reduce the support on the basis of his reduced income, but stated that if the court were to later reduce the amount of the award below $1,750, Father would be given credit back to May of 1997. In the order under appeal, the trial court reduced Father's monthly child support payments to $865.[2] Mother argues that the evidence preponderates against the trial court's decision.

As the party seeking modification of the previous child support award, Father had the burden of demonstrating that there existed a significant variance[3] between the amount previously set and currently ordered and the amount which would be due under the Child Support Guidelines based on current circumstances. *See* Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1998); *Turner v. Turner*, 919 S.W.2d 340, 342-343, 345 (Tenn. App. 1995).

Father asserted such a variance because his income had been reduced since the prior setting of child support. He testified that his 1996 income, as reflected in his W-2 form was $33,000. His salary from Sandusky Trucking Company, of which he is the sole stockholder, was reduced in 1996. The record does not include Father's petition to modify child support. The transcript of the

---

[2] The court made no finding regarding Father's specific income. According to the Guidelines, this figure would indicate a net annual income of $49,451.76 or a gross annual income of $70,200. We can find no basis for the court's implicit determination that Mr. Sandusky's net income had decreased by a little over 50%.

[3] A significant variance is defined as "at least 15% if the current support is one hundred dollars ($100.00) or greater per month". Tenn. Comp. R. & Regs. ch. 1240-2-4-.02(3) (1994).

hearing and the briefs, however, make it clear that Father's argument that he is entitled to a reduction is based solely on his reduced salary. Father's salary from his company was $50,000 in 1991, and at the time of entry of the previous order of support, it was $41,600. It is now $31,800, and he receives $1,200 per year from another position. Thus, his earned income has decreased only $8,600.

Father's child support obligation was set by the court in October 1995. In its order, the trial court specifically stated that the child support award was calculated as 32% of an income of $100,000, implicitly finding that amount to be Father's net income. Without determining the specific amount of Father's income, the trial court included Father's admitted income, profits from Sandusky Trucking Company and other income[4]. On appeal, this court affirmed, specifically holding that the solely-owned company's income was attributable to Mr. Sandusky.[5]

In its 1996 opinion, this Court found that the trucking company had a substantial net worth (the 1992 tax return showed the stockholder equity to be $545,596) and had consistently paid Mr. Sandusky a salary of $40,000 to $50,000 per year prior to 1995. Since his support obligation was originally set on the basis of his salary and the income from his business available to him, we must consider any decrease or offsetting increase in the business income. The evidence at the hearing herein regarding Sandusky Trucking Company's

---

[4] A comparison of Father's potentially income-producing assets at the time of the original setting of child support with those at the time of the hearing on his petition to reduce his support obligation reveals no significant change in those assets. Although Father had transferred all the stock of Sandusky Trucking Company to his father for $1,000 at the time of the original setting of the support amount, the court attributed income from that company to Father. By the time of the hearing herein, ownership of the company had been transferred back to Father. Similarly, Father testified that he had earlier transferred other assets, primarily real estate, to his present wife and to relatives, and that those assets had been transferred back to him before the hearing herein.

[5] This Court held that Mr. Sandusky's transfer to his father of all the stock of the company for $1,000, was void to defeat the interest of his children in appropriate support.

financial performance and Mr. Sandusky's salary history is reflected in this table:

|  | 1992 | 1993 | 1994 | 1995 | 1996 |
|---|---|---|---|---|---|
| Gross Receipts | $833,169 | $861,690 | $910,630 | $904,701 | $1,211,260 |
| Gross Profits | $784,366 | $765,562 | $819,963 | $763,359 | $811,475 |
| Total Income | $799,356 | $797,649 | $843,479 | $772,331 | $815,006 |
| Taxable Income | $79,281 | $83,810 | $127,128 | $397 | $8,594 |
| Total Assets | $572,275 | $607,583 | $759,264 | $710,515 | $814,209 |
| Retained Earnings | $449,923 | $516,338 | $596,875 | $596,875 | $603,604 |
| Salary | $41,600 | $41,600 | $40,800 | $40,800 | $31,200 |

Sandusky Trucking Company continues to have substantial worth. Its total assets in 1996 were $814,209, with $181,347 in debt. Significantly, retained earnings have increased from approximately $450,000 in 1992 to over $600,000 in 1996. Included in the expenses and deductions were claims for depreciation: Sandusky Trucking Company claimed $68,947 in 1992-1993, $79,522, in 1993-1994, $105,164 in 1994-1995 and $96,926 in 1995-1996.

Father testified that his company's net taxable income and cash on hand had decreased because, on advice from his accountant, he had acquired and maintained assets and investment properties, such as equipment and tracts of timber, in order to avoid or reduce corporate income taxes. His accountant testified that this type of reduction of taxable corporate income is normal in the

course of business.

Father's accountant defined retained earnings as "a cumulative profit figure that has not been paid out in dividends. The corporation has just retained those earnings." He also stated that Father could not spend the corporation's earnings unless the money was first paid to Father as salary or dividend, and then it would be taxable to Father as personal income.

In *Koch v. Koch*, 874 S.W.2d 571 (Tenn. App. 1993), this Court acknowledged the difficulty in establishing income for child support purposes, of a self-employed sole owner of a business. In that case, however, the court discounted the father's assertions that he had no income from his business, where the father stated he had made only capital withdrawals. The court looked at the gross receipts, gross income and other figures relative to the business and noted that the gross income in excess of $165,000 per year should provide a nice income to the proprietor. *Koch,* 874 S.W.2d at 578.

Self-employment requires a different method of calculating an obligor parent's income for child support purposes. The Guidelines require the court to consider all income of the obligor parent, and define gross income as including:

> all income from any source (before taxes and other deductions), whether earned or unearned . . . and includes income from self-employment. Income from self-employment includes income from business operations and rental properties, etc., less reasonable expenses necessary to produce such income. Depreciation, home offices, excessive promotional [sic], excessive travel, excessive car expenses, or excessive personal expenses, etc., should not be considered reasonable expenses.

Tenn. Comp. R. & Regs. ch. 1240-2-4-.03 (3)(a) (1994).

A self-employment situation where an obligor spouse or parent can control the salary he or she receives may raise issues requiring the court to examine "whether the potential exists for the obligor to manipulate his reported

income either by failing to aggressively solicit business or by inflating his expenses, thereby minimizing his income." *Beem v. Beem,* No. 02A01-9511-CV-00252, 1996 WL 6364491 at *4 (Tenn. App. Nov. 5, 1996) (no Tenn. R. App. P. 11 application filed). Another way to manipulate reported income is to pay a lower salary and not pay dividends, allowing the corporation to accumulate as retained earnings profits which would otherwise be distributed as dividends to the sole shareholder.

Where a business is solely owned, the company's accumulation of retained earnings can be considered in determining the income available to the sole shareholder who has set his or her own salary. See *Higgs v. Higgs*, No. 01A01-9702-CV-0057, 1997 WL 691530 at *3 (Tenn. App. Nov. 7, 1997) (no Tenn. R. App. P. 11 application filed) (in arguing his alimony obligation should be reduced, husband relied upon his salary, ignoring the fact that the retained earning of his corporation were available to him); *Needham v. Needham*, No. 03A01-9706-GS-00221, 1997 WL 789953 at *7 (Tenn. App. Dec. 23, 1997) (perm. app. denied June 22, 1998) (in determining whether husband's solely owned company's value had increased, the court observed that had husband paid himself dividends and larger salary, they would have been marital property).

The financial condition of Sandusky Trucking Company is such that it could pay its sole shareholder a larger salary or issue dividends. Father's explanation for lowering his own salary was that he now needed additional help with some of the labor involved in his business. No explanation was given for the lack of dividend income.

We are unconvinced that Father's reduced salary from the company he owns demonstrates an actual reduction in income justifying a decrease in his

child support obligation. An obligor parent cannot avoid a support obligation by simply arranging a smaller salary while a solely-owned business prospers. Further, Mr. Sandusky's business decision to increase his company's inventory and assets resulted in the lowering of the company's taxable income. While he was certainly free to make those decisions as a business owner, that action, the retention of earnings, and the lowering of his salary resulted in understating his personal income. When, however, the money which would have been available to him as personal income is considered, we are unable to find a reduction in his income. *See Craft v. Craft*, No. 01A01-9609-CH-00417, 1997 WL 122809 at * 3-4 (Tenn. App. March 19, 1997) (no Tenn. R. App. P. 11 application filed).

This court and the trial court have previously determined that the potential income from Sandusky Trucking Company is properly considered in determining Mr. Sandusky's income for purposes of setting child support. In light of the financial condition of that company, as compared to its condition when the award was originally set, we find no justification for the reduction of Father's child support obligation and reverse that decision. Child support shall remain at the amount set in the April 1997 order, $1,750 per month. Arrearage shall be calculated from April 1997 and must be paid within thirty (30) days of the entry date of this opinion. The interest rate set in Tenn. Code Ann. § 36-5-101(a)(5) shall apply to the arrearage accruing between April 1997 and the January 28, 1998 order modifying the child support. The trial court's order permitting Father to pay $6,371 in arrearage arising after April 1997 in $100 monthly installments is vacated.

In light of this disposition, we need not reach Mother's contention that

depreciation was improperly included in Father's income.[6] *But see* Tenn. Comp. R. & Regs. ch. 1240-2-4-.03 (3)(a) (providing that depreciation is not a permissible deduction when calculating the gross income of self-employed individuals for child support purposes); *accord Burchfield v. Nave*, No. 03A01-9308-JV-00271, 1994 WL 13374 (Tenn. App. January 21, 1994) (Tenn. R .App. P. 11 application denied).   Our decision also obviates the  need to address the issues relating to the propriety of reducing child support while Father was in contempt, the propriety of allowing Father to pay the arrearage at the monthly rate of $100 and the amount of interest owed.

## III.

Mother maintains that the trial court erred in its calculation of Father's obligation for his daughter's college education.  Father responds that the trial court properly construed the MDA in his favor, applying a reasonableness standard which more accurately reflected the parties' intent than the actual language of the agreement.

In the MDA, Father undertook voluntary contractual obligations to support the children's education.  *See Penland v. Penland*, 521 S.W.2d 222, 224-225 (Tenn. 1975).  The pertinent provisions of the MDA stated:

> In the event that any or all of the parties' children should desire to attend college or vocational school upon his or her graduation from high school, the husband agrees to provide a (4) four year college or vocational education for that child. The expenses to be paid by the husband toward the college or vocational  education for each child shall include, but not be limited to, tuition, room, board, fees, clothing, medical and dental expenses, transportation to and from school, books, supplies and a reasonable spending allowance. Each child shall have the right after consultation with both parents, to select the college or vocational institution he or she desires to attend.

---

[6] As set out earlier, Sandusky Trucking reported significant depreciation on its tax returns.

Father's agreement to pay his children's college expenses is enforceable and, as with other contracts, will be enforced in accordance with its terms. *See Haas v. Haas*, No. 02-A-01-9604-CV-00073, 1997 WL 194852 at *3 (Tenn. App. April 22, 1988) (no Tenn. R .App. P. 11 application filed). There is no ambiguity in the terms of this agreement. Therefore, the courts will enforce Father's agreement to pay tuition, room, board, fees, clothing, medical and dental expenses, transportation to and from school, books, supplies, and a reasonable spending allowance. The only real issue, then, is the reasonable cost of those items.

Both the daughter and the Vice President for Student Services at the daughter's college testified as to the expenses involved in attending Columbia State Community College. The daughter testified that her actual monthly expenses during five months of attending college were $1,287.47 not including her car payment, housing, or health or car insurance, all of which were provided by Mother. Mother also paid for medical expenses not covered by insurance and $50 per week spending money. The daughter's expenses included utilities, phone, clothing and personal items, and spending money. The daughter testified that Father paid $581 to cover tuition for one semester, paid a total of $290.52 for books, and gave her a used computer. She stated that Sandusky Trucking Company wrote her a check in the amount of $300.

The vice president of the college testified that the predicted two-semester (9-month) budget[7] for an average in-state independent student was $11,511, which included tuition, fees, books, supplies, room, board, clothing, personal expenses, and transportation costs. The figure for attending without a

_____

[7] This is the budget submitted by Columbia State Community College to the U.S. Department of Education.

summer break was $14,414. The two-semester figure breaks down to approximately $1,153 per month, excluding tuition. Tuition and fees were $1,132 for two semesters at the time of the hearing.

Father testified that, in addition to paying for tuition and books, he was willing to make monthly payments of $500. The trial court set Father's obligation for daughter's living expenses at $600 per month, in addition to tuition and books. We are unable to find evidence in the record to support that figure or for the conclusion that that amount was sufficient to cover the daughter's expenses. *See* Tenn. R. App. P. 13(d).

We therefore reverse the trial court's decision on Father's obligations regarding his daughter's college education. We find the figures presented by the Vice President of Columbia State Community College to be reasonable. *See Moore v. Moore*, 603 S.W.2d 736, 739 (Tenn. App. 1980). Father is therefore ordered to pay the daughter's tuition, including fees, when it is due, and in the amount billed by the college. In addition, Father is ordered to pay $1,153 per month (which figure includes the allowance for books) in expenses for two semesters (9 months) each year for a four year education, so long as she attends college full time. We do not interpret Father's agreement to include expenses for attending year-round.

## IV.

Mother maintains the trial court abused its discretion by failing to order Father to pay her attorney fees. Father responds that the ruling was proper because Mother presented no evidence that she was unable to pay them.

Tenn. Code Ann. § 36-5-103(c) provides:

The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may

recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

With the adoption of this statute, awards for legal expenses in support proceedings have become "familiar and almost commonplace" despite some inconsistencies in their apportionment. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. App. 1992).

In addressing attorney fees, the trial court's sole finding was "that each party pay their respective attorney fees, each being equally capable of paying their attorney fees." However, "ability to pay should not be the controlling consideration with regard to awards for legal expenses in . . . support proceedings . . . The purpose of these awards is to protect the children's, not the custodial parent's, legal remedies . . . Accordingly, requiring parents who precipitate . . . support proceedings to underwrite the costs if their claims are ultimately found to be unwarranted is appropriate as a matter of policy." *Id.; see* Tenn. R. App. P. 13(d).

Father's conduct in refusing to pay the court-ordered amount of child support precipitated these proceedings. In contravention of a court order that he pay $1,750 per month, Father unilaterally determined that his payment should be lower and only paid $688 per month. Mother has prevailed on the dispositive issues presented in this appeal -- the decision to reduce Father's child support payment and on the calculation of the daughter's college expenses. We believe it is appropriate for Father to pay Mother's legal fees incurred in pursuing this matter. On remand, the trial court will determine the appropriate reasonable amounts. We also believe Mother is entitled to such fees on appeal as the

prevailing party, said fees to be set by the trial court. *See Robertson v. Robertson*, No. 03A01-9711-CV-00511, 1998 WL 783339 at * 8 (Tenn. App. November 9, 1998) (Tenn. R. App. P. 11 application pending).

In summary, we reverse the trial court's decisions reducing the amount of Mr. Sandusky's child support obligation, calculating the amount of college expenses due the daughter, and declining to award Mother attorney fees. This case is remanded for proceedings consistent with this opinion. Costs of this appeal shall be taxed to Mr. Sandusky for which execution may issue.

_____
PATRICIA J. COTTRELL, JUDGE

CONCUR:


_____
BEN H. CANTRELL, PRESIDING JUDGE (M.S)


_____
WILLIAM C. KOCH, JR., JUDGE

The record shows that the trial court held Father in contempt on March 24, 1997 for failure to pay child support found due and owing by the court. The trial court ordered Father to pay $48,231.63 in arrearage by March 24, 1997 or be incarcerated. At that hearing, Father stated he had no intention of complying with the trial court's orders. (TR. 53)

The record before this court further shows that Father owed $23,648.27 in arrearage on April 23, 1997 and had conveyed all his real estate holdings to his new wife and siblings. (TR. 57) The trial court again held Father in contempt and ordered him to pay the arrearage or be placed in custody. The fact that Father was not incarcerated during the December 8, 1997 and January 12, 1998 hearings indicates that he purged himself of the contempt by paying his initial arrearage in child support.

While Father's unilateral decision to defy the court's order to pay the full $1750 per month certainly supports a finding of contempt[8], the trial court did not choose to impose that sanction. *Compare Mackey v. Cumerlato,* 1997 WL 15084, * 4 (August 4, 1987); *see also Ball v. Ball*, No. 02A01-9709-GS-00239, 1999 WL (Tenn. App. February 25, 1999). The well-established rule providing trial courts with broad discretion on whether to impose contempt sanctions precludes us from finding that that decision constituted an abuse of discretion. *See Robinson v. Air Draulics Engineering Co.,* 377 S.W.2d 908, 912, 214 Tenn. 30, 37, (1964).

---

[8] Father's decision to pay less than the court-ordered amount of child support created a new arrearage which the trial court addressed in its January 28, 1998 order.