IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

## JEREMY EARL TOMPKINS v. MARY HELEN RAINEY

**Direct Appeal from the Juvenile Court for Shelby County**
**No. K6372      A.V. McDowell, Special Judge**

---

**No. W1999-01218-COA-R3-CV - Decided July 11, 2000**

---

In this action to establish parentage, Jeremy Earl Tompkins (Father) appeals the trial court's final judgment awarding Mary Helen Rainey (Mother) custody of the parties' infant son. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; and Remanded**

FARMER, J., delivered the opinion of the court, in which CRAWFORD, P.J.,W.S., and HIGHERS, J., joined.

Aubrey L. Brown, Jr., Memphis, Tennessee, for the appellant, Jeremy Earl Tompkins.

Wm. Craig Hall, Collierville, Tennessee, and Richard F. Vaughn, Memphis, Tennessee, for the appellee, Mary Helen Rainey.

**OPINION**

The parties began dating in January 1998, and they began living together in March 1998. In May 1998, the parties discovered that the Mother was pregnant. Shortly thereafter, the Mother's parents informed the parties that they could provide insurance coverage and a place to live if the parties moved to Charlottesville, Virginia. Consequently, in June 1998, the parties moved from Memphis to Charlottesville and began living with the Mother's parents.

By December 1998, the Father was unhappy living in Charlottesville because he missed his family and friends in Memphis. The Father also complained that the Mother's parents' home was dirty and cluttered and that the Mother and her mother often bickered. With the Mother's agreement, the Father returned to Memphis and began working for his father as a carpenter's apprentice. The Father returned to Charlottesville for Christmas and again in January 1999 when the child was born.

Because of the insurance coverage provided by the Mother's parents, the parties did not have to pay any expenses related to the child's birth.

In early February 1999, within weeks of the child's birth, the Father and the Mother returned to Memphis to live. Almost immediately, however, the parties began experiencing discord in their relationship. Upon returning to Memphis, the Mother learned that the Father had not yet obtained an apartment for the parties. The Mother refused to live with the Father at his parents' home, so she and the child stayed with a friend in Southaven, Mississippi, and, later, with a sister in Jackson, Mississippi. By the end of February 1999, the Father had obtained an apartment for the parties in the Memphis area. Less than two months after moving into the apartment, however, the parties separated.

On April 28, 1999, the Father initiated the present proceedings when he filed a petition to establish parentage of the child. *See* Tenn. Code Ann. §§ 36-2-301 to -322 (Supp. 1998). In addition to asking the trial court to establish the child's parentage, the Father requested the trial court to temporarily enjoin the Mother from removing the child from Shelby County and to award the Father specific and liberal visitation with the child. The Father later amended his petition to seek custody of the child.

At trial, the Father acknowledged that the Mother had served as the child's primary caretaker since the child's birth. The Father testified, however, that he attempted to take care of the child by changing the child's diapers and by feeding and burping the child. According to the Father, the Mother limited his role in caring for the child because she was "overly protective" of the child and critical of the Father's parenting methods. The Father also testified that, when the parties had conflicts both before and after their separation, the Mother threatened to prevent the Father from seeing the child.

The Mother admitted that she had threatened to prevent the Father from visiting the child. She explained, however, that she made some of these statements "out of anger" when the parties were arguing. The Mother also complained that, when the Father exercised visitation, he did not keep her informed of the child's whereabouts and, on at least one occasion, refused to answer her phone calls.

The Mother expressed a desire to move with the child back to Charlottesville. The Mother's parents had offered to help her get an apartment that was approximately fifteen minutes from their home. The Mother planned to go back to work for Federal Express and to return to school. The Mother testified that her mother would help care for the child while the Mother was working and attending classes. The Mother proposed meeting the Father halfway between Charlottesville and Memphis to enable the Father to exercise visitation with the child. The Mother also testified that the Father could stay with one of her relatives if he chose to exercise visitation in Charlottesville.

At the trial's conclusion, the trial court entered an order declaring the Father to be the child's father, awarding custody of the child to the Mother, awarding the Father specified visitation, and

ordering the Father to pay child support in the amount of $364.35 per month. The trial court further ordered the Mother to meet the Father in Knoxville in the event the Father could not travel to Charlottesville to exercise visitation with the child. On appeal from this order, the Father challenges only the trial court's decision to award custody of the parties' child to the Mother.

Our review of the trial court's custody decision is governed by rule 13(d) of the Tennessee Rules of Appellate Procedure. *See Ruyle v. Ruyle*, 928 S.W.2d 439, 441 (Tenn. Ct. App. 1996); *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993). Rule 13(d) requires this court, in conducting a *de novo* review of the record, to presume that the trial court's factual findings are correct, unless the evidence in the record preponderates otherwise. *See* Tenn. R. App. P. 13(d). In applying this standard of review, we are mindful that "[t]rial courts are vested with wide discretion in matters of child custody" and that "the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." *Koch*, 874 S.W.2d at 575. Because "[c]ustody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility" during the proceedings, appellate courts "are reluctant to second-guess a trial court's decisions." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). The courts' paramount concern in a custody case is the welfare and best interest of the parties' minor child. *See Ruyle*, 928 S.W.2d at 441; *Koch*, 874 S.W.2d at 575. This determination necessarily turns on the particular facts of each case. *See Koch*, 874 S.W.2d at 575.

In making its custody decision, the trial court is required to engage in a "comparative fitness" analysis. *Gaskill*, 936 S.W.2d at 630. That is, the court is required to determine which parent is a comparatively more fit custodian than the other. *See id*. This factually-driven inquiry requires the court to carefully weigh, *inter alia*, the following considerations:

> (1)     The love, affection and emotional ties existing between the parents and child;
>
> (2)     The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3)     The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .
>
> (4)     The stability of the family unit of the parents;
>
> (5)     The mental and physical health of the parents;
>
> (6)     The home, school and community record of the child;
>
> (7)     The reasonable preference of the child if twelve (12) years of age or older. . . .

(8)     Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . . .

(9)     The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10)     Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106 (Supp. 1998).

On appeal, the Father contends that the trial court erred in awarding custody of the child to the Mother because the foregoing factors, with the exception of subsection (3) regarding the "importance of continuity," favored awarding custody to the Father as the more comparatively fit custodian. In support of this contention, the Father cites evidence that, at the time of trial, he was in perfect health, was gainfully employed, had provided financial support to the Mother and child pending these proceedings, and had a close relationship with his parents. The Father contends that, in contrast, the evidence showed that the Mother was unemployed, had a tense and sometimes violent relationship with her own mother, and had interfered with the Father's visitation with the child in the weeks following the parties' separation.

Despite the favorable evidence supporting the Father's custody request, we conclude that the trial court did not err in awarding custody of the parties' child to the Mother. The Mother countered many of the Father's allegations by testifying that she and her mother did not have a violent relationship and that, upon her move to Virginia, the Mother planned to find employment and return to school.[1] Although the Mother acknowledged that she had threatened to prevent the Father from seeing the child, the Mother explained that she made some of these statements out of anger shortly after the parties' separation. At trial, the Mother stated that she wanted the Father to see the child in the future and that she wanted the child "to grow up knowing his father." The Mother also attested to her willingness to cooperate with and abide by the court's future orders regarding custody and visitation.

The trial court's comments made at the trial's conclusion suggested that, to the extent the Father's testimony conflicted with that of the Mother, the trial court accepted the Mother's version of events. Inasmuch as the trial court alone had the opportunity to observe the witnesses, we are not in a position to second-guess that court's determination of credibility. *See Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996); *Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983).

---

[1]The Mother also disputed the Father's account of the living conditions in the home of the Mother's parents.

Moreover, the trial court's comments made from the bench suggested that the court was particularly concerned with the factor of the importance of continuity in the child's life. This court has repeatedly emphasized the importance of stability and continuity of placement in custody cases. *See Gaskill*, 936 S.W.2d at 630; *see also McCain v. Grim*, No. 01A01-9711-CH-00634, 1999 WL 820216, at *2 n.1 (Tenn. Ct. App. Oct. 15, 1999) (*no perm. app. filed*); *Burlew v. Burlew*, No. 02A01-9807-CH-00186, 1999 WL 545749, at *7, *9 (Tenn. Ct. App. July 23, 1999), *perm. app. granted on other grounds* (Tenn. July 3, 2000); *Smith v. Smith*, No. 01A01-9511-CH-00536, 1996 WL 526921, at *4 n.7 (Tenn. Ct. App. Sept. 18, 1996) (*no perm. app. filed*). Although continuity does not trump all other factors, *see Gaskill*, 936 S.W.2d at 630, "it remains an important consideration." *Grover v. Grover*, No. 01A01-9804-CH-00197, 1999 WL 257653, at *5 (Tenn. Ct. App. Apr. 30, 1999) (*no perm. app. filed*).

In the present case, the evidence was undisputed that the Mother was the child's primary caretaker both prior to and after the parties' separation. Although the trial court was not required to award custody of the child to the Mother on this basis, *see Grover*, 1999 WL 257653, at *5, we conclude that the court properly emphasized the Mother's undisputed role as the child's primary caretaker in making its custody decision.

In affirming the trial court's custody order, we reject the Father's argument that, in making its custody determination, the trial court applied the wrong legal standard. The Father complains that, during the trial, the trial court made certain comments that suggested that, rather than engaging in a comparative fitness analysis, the court was placing the burden on the Father to prove that the Mother was unfit to be the child's custodian.

We conclude that the trial court's statements, when viewed in their entire context, do not support the Father's argument that the trial court used the wrong standard in awarding custody of the child to the Mother. *See Reno v. Reno*, E1999-00590-COA-R3-CV, 2000 WL 276990, at *4-*6 (Tenn. Ct. App. Mar. 25, 2000) (*no perm. app. filed*). To the contrary, after reviewing the record, we remain convinced that the trial court properly applied the "best interest" and "comparative fitness" analyses required by law. During opening arguments, for example, the trial court asked the Father's counsel "why it would be in the best interest of the child to be with the father?" Moreover, during the proceedings, the trial court repeatedly stressed to the parties that the Mother's rights to parent the child were no greater than the parental rights possessed by the Father.

The trial court's judgment is affirmed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellant, Jeremy Earl Tompkins, for which execution may issue if necessary.