IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 23, 2003 Session

## RAYMOND P. ANTHONY v. CHRISTINE D. RODGERS

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-007664-01      Rita L. Stotts, Judge**

---

**No. W2002-01240-COA-R3-CV - Filed September 23, 2003**

---

This case began as a petition for dependency and neglect but evolved into a custody dispute between the mother and father of a child born out of wedlock. Originally, the mother appealed to the Circuit Court of Shelby County which stayed the order of the Juvenile Court granting custody to the father. The father appealed to this Court pursuant to Rule 10 of the Rules of Appellate Procedure and we remanded this case to the Circuit Court for entry of an order transferring the appeal to this Court as the Circuit Court lacked subject matter jurisdiction. For the following reasons, we affirm the decision of the Juvenile Court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

William M. Monroe, Gayle B. Lakey, Memphis, TN, for Appellant

Barbara McCullough, Memphis, TN, for Appellee

### OPINION

### Facts and Procedural History

This case involves the custody of a minor child ("Child") born out of wedlock to a twenty-year-old mother, Christie Rodgers ("Mother"), and a twenty-nine-year-old, married father, Raymond Anthony ("Father"). The child was born on May 4, 2001, and originally Mother thought that Father's brother, Scotty Anthony, was the child's father. When Scotty Anthony tested negative after a DNA test, Mother suspected that Raymond Anthony was the father of the child. On August 15, 2001, Father also took a DNA test and tested positive as the child's father. There is a dispute about whether Father found out about the test results on August 20 or August 28, however, that dispute is

immaterial. Given that Father has a wife, Tina Anthony ("Wife"), and two daughters by Wife, Kelsey and Katie, Father waited to tell Wife about Child until September 10, 2001.

From the time Child was born until September 6, 2001, Mother lived in the home of her parents, Sandra Rodgers ("Grandmother") and Ricky Rodgers ("Grandfather"). After the child was born, she had a low white blood cell count, and Mother and Grandmother took her to see their family doctor, Dr. Segal. Dr. Segal last saw the child on June 22, 2001, and the child was subsequently enrolled in TennCare under the care of Drs. Shelton of Memphis and McKee of Oakland, Tennessee. Mother took Child to have her two month shots on July 14, 2001, and on September 14, 2001, Mother took Child to get her four-month shots. While Mother and Child lived in Grandmother's and Grandfather's home, Mother worked for Grisham Corporation where Grandmother also worked. On September 6, and until September 18, 2001, Mother moved out of her parents' home due to an argument with Grandmother concerning how Father had not told his wife about Child yet. During that period of thirteen days, Mother continued to see Child at Child's day care center and took Child to Dr. McKee in Oakland, Tennessee, as directed by TennCare. Mother had been living with her boyfriend, Heath Jeffers, and his parents during that time. After September 18, 2001, Mother began a job as a waitress at Red Lobster which she continued until the time of trial in December 2001 working approximately twenty-five to thirty hours a week.

On September 17, 2001, Grandmother became fearful of what Wife would do to Mother or Child if she ever found them, so Grandmother filed a petition for custody based upon allegations of dependency and neglect. Though Grandmother knew Mother was staying with a friend, she did not know which one and did not list an address for Mother, nor did she list a father on the petition despite her knowledge of the DNA test. On the same day the petition was filed, the Juvenile Court of Shelby County issued an *ex parte* order granting Grandmother and Grandfather temporary joint custody over Child pending an investigation. Mother immediately contacted Father and told him what Grandmother had done. Subsequently, Mother and Grandmother reconciled, and on September 21, 2001, another temporary joint custody order was issued by the Juvenile Court, this time giving custody to Mother, Grandmother and Father. Father filed a petition to establish parentage and legitimate Child on September 24, 2001. The next day, Father filed a petition for custody pursuant to Tenn. Code Ann. 37-1-130 for dependency and neglect on grounds that Mother neglected the physical and medical needs of Child, abused alcohol, was not stable in her residence, was unable to financially support Child, and was unemployed. The child was legitimated by a consent order dated October 14, 2001, and a hearing was held before the Honorable Claudia Haltom on October 23, 2001. Judge Haltom heard the evidence for the two petitioners, dismissed the Grandmother's petition based on dependency and neglect, and awarded custody of Child to Father and Wife, giving Mother only visitation. Mother subsequently filed a request for a hearing before a Juvenile Court judge on October 25, 2001. A guardian ad litem was appointed, and a hearing was held on December 11 and 12, 2001.

In the period between the October hearing and the December hearing, during which Father and Wife had custody of Child, Father and Wife took Child to a family pediatrician, Dr. Perry, on four occasions, the first being the day after the October hearing. At those appointments, Dr. Perry

treated Child for an ear infection and ringworm. Additionally, Father and Wife bought new clothes for Child, sheltered Child in their four bedroom home, and, in fact, spent more money on Child for Christmas than one of Wife's and Father's children.

In the Juvenile Court for Shelby County, the Honorable Harold Horne dismissed Grandmother's petition for custody on dependency and neglect grounds but awarded custody to Father and Wife pursuant to Tenn. Code Ann. 36-6-106, holding that it was in the best interest of the child for Mother to have only visitation rights. Mother appealed to the Circuit Court of Shelby County which stayed the order of the Juvenile Court and Father appealed to this Court under Rule 10 of the Tennessee Rules of Appellate Procedure. This Court found that the Circuit Court lacked subject matter jurisdiction and remanded the case so that appeal could be transferred to this Court. The parties raise the following issues for our review:

I. Whether this Court lacks subject matter jurisdiction to hear this appeal given that it began as a petition for dependency and neglect;
II. Whether the trial court erred in awarding custody to Father based on a statute under which Father did not proceed, and whether such award violates Mother's due process rights;
III. Whether the trial court erred in using the test of best interests of the child rather than finding a material change of circumstances given that two temporary custody orders existed at the time of the hearing;
IV. Whether the evidence preponderates in favor of the Mother.
V.

**Standard of Review**

When this Court reviews a trial court's findings of fact, such review is *de novo* with a presumption of correctness. Tenn. R. App. P. 13(d). More specifically, the standard of review for an initial custody determination is *de novo* upon the record of the trial court with a presumption of correctness unless the preponderance of the evidence is otherwise. *Hass v. Knighton*, 676 S.W.2d 554 (Tenn. 1984). In finding the facts, "[t]rial courts are vested with wide discretion in matters of child custody and the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion." *Koch v. Koch*, 874 S.W.2d 571, 575 (Tenn. Ct. App. 1993)

**Subject Matter Jurisdiction**

Appellant's first issue on appeal questions whether this Court has subject matter jurisdiction to hear this appeal. Pursuant to Tenn. Code Ann. § 37-1-159(a), "any appeal from any final order or judgment [of the Juvenile Court] in an unruly child proceeding or dependent and neglect proceeding, filed under this chapter, may be made to the circuit court which shall hear the testimony of witnesses and try the case de novo." However, Tenn. Code Ann. § 37-1-159(g) states that "[a]ppeals in all other civil matters heard by the juvenile court shall be governed by the Tennessee Rules of Appellate Procedure." In this case, the Juvenile Court dismissed both the Grandmother's and the Father's petitions for dependency and neglect. Instead, the trial court made a custody

determination between two parents and awarded custody to the Father.  It is this determination, not the dependency and neglect issue, that Mother is appealing.  Therefore, this Court, and not the Circuit Court of Shelby County, may properly exercise subject matter jurisdiction over the trial court's custody determination.

## Amendments to Conform to the Evidence and Notice

Appellant Mother next argues that it was error for the trial court to award custody to Father based on Tenn. Code Ann. § 36-6-106, since Father proceeded under Tenn. Code Ann. § 37-1-130 dealing with dependency and neglect claims.  In essence, her argument is that, because Father filed a petition pursuant to the dependency and neglect statute, Mother only prepared to defend under that statute alone.  Therefore, Mother argues, she was prejudiced and surprised at the trial level when the trial court awarded custody of Child to Father and Wife.  After our review of the record, we find no merit in this argument.

To begin, Mother contends that, when she proceeded in the Juvenile Court, she had no notice that the hearing would be covering an issue other than dependency and neglect.  However, statements by Mother's counsel indicate that Mother was aware Father was not proceeding under Tennessee's dependency and neglect statute.  More specifically, counsel for Mother in the October hearing stated:

> The petition for dependency and neglect is being withdrawn. We'll go on to a different petition in that regard.  I'll go into a little background material and Your Honor may determine how we want to proceed.  My perception is the issue is strictly going to be custody of where this minor child should be.

Later, counsel for Mother, again in his opening remarks at the October hearing, stated: "Since that time the father has now filed a petition for custody.  There is no issue in terms of dependency and neglect.  There is an issue in terms of where this child would best be during this period of time." These statements indicate that, despite Father's initial reliance on Tennessee's dependency and neglect statute, counsel for Mother, and therefore Mother herself, knew that the proceedings in the trial court were custody proceedings, with the Father asking the court to make a custody determination between the two parents of Child.

In addition, the Tennessee Rules of Juvenile Procedure and the Rules of Civil Procedure allow for an amendment of the pleadings to conform them to the evidence.  Rule 1(b) of the Tennessee Rules of Juvenile Procedure states that "[t]hese rules shall govern the procedure in Juvenile Court in all cases in which children are alleged to be . . . dependent and neglected" but goes on to state that "[t]he Tennessee Rules of Civil Procedure shall govern all . . . child custody proceedings under Tenn. Code Ann. § 36-6-201 et seq. . . . ."  As this Court has already stated in its discussion of subject matter jurisdiction, the proceeding in the Juvenile Court was not one for dependency and neglect but rather for a determination of custody between the two parents of the child.  As such, the Tennessee Rules of Civil Procedure apply to the proceedings of the Juvenile Court below.  In particular, Rule 15.02 states that "[w]hen issues not raised by the pleadings are tried

by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Tenn. R. Civ. Proc. 15.02. As Appellant Mother emphasizes in her brief to this Court, the requirements for determining whether a child is "dependent and neglected" under Tenn. Code Ann. § 37-1-102(b)(12) are different from the requirements of Tenn. Code Ann. § 36-6-106 which lists factors for determining which parent meets the best interests of the child. For example, in no provision of the definition of "dependent and neglected" child does it require a showing of the type of relationship or bond that the parties asking for custody currently have with the child. Such factors are requirements under Tenn. Code Ann. § 36-6-106 when a court must find whose custody would meet the best interests of the child. Given that there was no objection on the basis that such evidence is irrelevant in a dependency and neglect proceeding, we find that the pleadings of the Father were amended to conform to the evidence presented.

### Best Interest of the Child Standard

Appellant Mother next asserts that, even if the trial court were correct in changing the proceeding to a custody proceeding, the trial court erred because, before awarding custody to Father, it did not find that there had been a material change in circumstances. Mother argues that, because two temporary custody orders had been issued, the first granting custody to Grandmother and Grandfather and the second granting custody to Mother, Grandmother and Grandfather, the trial court should have found a material change in circumstances before addressing the factors of Tenn. Code Ann. 36-6-106.

Both temporary orders are defective in that no notice of the proceedings was given to Father. It is true that "custody and visitation decisions, once made and implemented, are *res judicata* upon the facts in existence or reasonably foreseeable when the decision was made." *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). It is this preclusive effect of custody determinations which require a "material change in circumstances" to modify them. Tenn. Code Ann. § 36-6-101(a)(2)(B). However, when Grandmother filed her petition for dependency and neglect on September 17, 2001, she knew, to a 99.9% probability according to the DNA test, that Raymond Anthony was the father of Child before that petition was filed. "The doctrine of *res judicata* bars a second suit between the same parties or their privies on the same cause of action with respect to all issues which were or could have been litigated in the former suit." *Goeke v. Woods*, 777 S.W.2d 347, 349 (Tenn. 1989). Since Father was given no notice of the proceedings resulting in two temporary custody orders and, in fact, was not made a party, such orders lack the preclusive effect that custody orders normally carry. The fact that Father, at that time, did not have custody makes no difference. Tennessee courts have held that "a parent's fundamental interest is not lost simply because of a lack of custody." *State of Tennessee, Dept. of Human Services v. Grove*, 1989 Tenn. App. LEXIS 45, *7 (Tenn. Ct. App. 1989)(*citing Stanley v. Illinois*, 405 U.S. 645 (1972)). Therefore, the trial court did not err when it did not first find a material change in circumstances before addressing the factors determining what was in the best interests of the child.

## Presumption of Correctness

Given that Father need not show a "material change in circumstances," we find it was proper for the trial court to engage in a "comparative fitness" analysis using the factors listed in Tenn. Code Ann. § 36-6-106 to determine what was in Child's best interests. Because "[a] determination of a child's best interests must turn on the particular facts of each case[,]" we must review the trial court's findings *de novo* with a presumption of correctness. *Koch*, 874 S.W.2d at 575 (Tenn. Ct. App. 1993). After a review of the record, we find that the evidence does not preponderate against the findings of the Juvenile Court.[1]

First, the Juvenile Court at the December hearing found that the "love, affection and emotional ties" between each parent and the child were equal. The testimony in the record supports this finding. It is clear that, for the first few months of Child's life, Mother had a loving relationship with Child. Though Father did not visit, see, or hold Child until he was awarded custody in the October hearing, Father had developed a loving relationship with Child by the time of the December hearing. Child was included in activities with Father, Wife and their two children such as family meals and going to church.

Second, the Juvenile Court examined the disposition of each parent to provide food, clothing and medical care, which it found to be equal between the two parents. Mother, while she had custody of Child, took Child to numerous doctor appointments for shots or to treat any illness, provided the child with clothing, and resided with Grandmother and Grandfather at their home. Father, too, has provided Child with food, clothing and shelter since taking custody of Child in October 2001 as well as taking Child to see a physician for checkups and illness. Though Father contributed nothing from the time of the DNA test to the point of the October hearing, Mother is also guilty of this in that she had contributed very little to these needs from the time of the October hearing to the December hearing. Our review of the record supports this finding as well.

Third, the trial court considered the importance of continuity in the child's life and found this factor to be inapplicable because Child, at the time of the December hearing, was only seven months old and would very likely be unable to appreciate the change in environment from one parent to the other. We find nothing in the record that contradicts this finding.

Fourth, the trial court examined the stability of the family unit for each parent and found Father's superior to Mother's. Our review of the record does not find the evidence preponderates against this finding. The Father is in a long-term, marital relationship with his wife of almost eleven years and has two daughters already in his own four-bedroom home in Olive Branch, Mississippi. Though the revelation of Father's affair with Mother caused tension between Father and Wife, both

---

[1] The Juvenile Court in the December hearing found some of the factors inapplicable to the case. These factors were the mental and physical health of the parents, the home, school, and community records of the child, the reasonable preference of a child over the age of twelve, and evidence of physical or emotional abuse. Tenn. Code Ann. § 36-6-106(a)(5-8). After our review of the record, we agree that these factors are inapplicable to these circumstances.

have since been to counseling sessions with Bob Williams, a preacher who performed Father and Wife's premarital counseling, and both Father and Wife state their marriage is stronger than before. Mother, at the time of the December hearing, was working as a waitress, living in her parents' house, which she had moved out of three times in the past, and about to begin a ten-month semester at the Plaza Beauty School requiring her to be away from home four days out of the week. Wife was a full time parent that could be with the children all day long. There is insufficient evidence in the record to preponderate against the trial court's finding that Father's family setting was more stable than that of Mother.

Fifth, the trial court examined the character and behavior of the persons residing in the respective homes of the parents and found each side to be equal. It found, and the evidence supports, that Child had successfully integrated into Father's family of a wife and two daughters since Father was awarded custody in the October hearing. It also found that on the Mother's side there were the two maternal grandparents who had clearly shown a willingness to care for and protect Child. Though there was evidence of animosity between the two extended families, the court found, and this Court agrees, that such evidence does not affect each side's ability to raise the child.

Finally, the Juvenile Court reviewed each side's past and potential for future performance of parenting responsibilities, including each parent's willingness to encourage a continuing parent-child relationship with the other parent, and found each parent to be equal. Mother, since she found out who the true father of Child was, has encouraged Father to have a relationship with Child. Though there is evidence that Wife and Mother have had altercations over the phone since the change of custody at the October hearing, Wife stated that she would welcome calls from Mother as long as they concerned the welfare of Child and not the child custody case itself. This Court agrees that the evidence does not preponderate against finding the parties equal for this factor as well.

This Court finds that the evidence does not preponderate against the Juvenile Court's holding that awarding Father custody would serve the best interest of Child and, therefore, we must affirm the decision below. At the time of the December hearing, the Juvenile Court was correct in finding that custody with Father served the best interest of Child.

### Conclusion

For the foregoing reasons, we affirm the decision of the Juvenile Court. Costs are judged against Appellant, Christine D. Rodgers, and her surety, for which execution may issue, if necessary.

_____
ALAN E. HIGHERS, JUDGE